This is an appeal from a summary judgment for the defendant "health care provider" entered by the trial court because the plaintiff failed to provide an expert witness who was a "similarly situated health care provider," as defined in §6-5-548, Ala. Code 1975, to establish the standard of care alleged to have been breached.
On the morning of March 22, 1989, Alice Bell Shoffeitt was taken to the emergency room at East Alabama Medical Center (hereinafter "EAMC"), complaining of nausea, vomiting, and pain in her chest and arms. Dr. J. Dell Crosby, the physician in attendance in the emergency room, diagnosed her as suffering from osteoarthritis and advised her to consult her regular physician if her complaints continued, worsened, or changed. He prescribed Demerol, Vistaril, and Darvocet for pain and then released Mrs. Shoffeitt.
Later that day, Mrs. Shoffeitt's husband found that she had stopped breathing. Paramedics, summoned by Mr. Shoffeitt, transported Mrs. Shoffeitt to the emergency room at EAMC. The physicians and staff of the emergency room were able to restore her heartbeat, but she was kept alive only by means of life-support systems. After several days on the life-support systems, the family requested that the systems be terminated. Mrs. Shoffeitt died on March 28, 1989. An autopsy revealed that her death was caused by cardiopulmonary arrest due to an acute myocardial infarction.
Betty Jean Medlin, Mrs. Shoffeitt's daughter, in her capacity as administratrix of Mrs. Shoffeitt's estate, sued Dr. Crosby. Dr. Crosby filed a motion for summary judgment on the basis that Medlin had failed to designate an expert witness who met the definition of "similarly situated health care provider" within the meaning of § 6-5-548(c), Ala. Code 1975. The statute provides:
 "In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the 'health care provider' failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice. . . ."
Ala. Code 1975, § 6-5-548(a).
Subsection (c), the section applied by the trial court, defines a "similarly situated health care provider" as one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same specialty; and
 "(3) Is certified by an appropriate American board in the same specialty; and
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred."
Id. (c).
Dr. Crosby is board certified in family medicine. He has practiced as a full-time emergency room physician since June 1986. Medlin's expert, Dr. Jonathan Borak, is certified in internal medicine, has practiced emergency medicine, and currently teaches emergency medicine at Yale Medical School.
After a hearing, the trial court entered a summary judgment in favor of Dr. Crosby because "[n]o expert testimony ha[d] been offered by the Plaintiff by any medical witness who is 'certified by an appropriate American board in the same specialty' as the defendant Physician, within the meaning of Section 6-5-548(c)(3), Code of Alabama, 1975." It is from this summary judgment that Medlin appeals.
The trial court found that Medlin's expert witness, Dr. Borak, failed to meet the qualifications, established by §6-5-548(c), of a "similarly situated health care provider," and that, therefore, Dr. Borak could not provide testimony as to the standard of care Dr. Crosby, the defendant "health care provider," allegedly breached, which was required to withstand the motion for summary judgment. *Page 1293 
On appeal, Medlin raises two issues: (1) whether the trial court correctly interpreted and applied § 6-5-548, and (2) whether the statute is unconstitutional.
The only ground given by the trial court for not qualifying Dr. Borak as a "similarly situated health care provider" was that he was not certified in the same specialty as Dr. Crosby. Dr. Borak is board certified in internal medicine, and Dr. Crosby is board certified in family medicine. However, both doctors practice emergency medicine, and the standard of care required by a doctor practicing emergency medicine is the standard that Dr. Crosby allegedly breached. The incident from which this cause of action arose occurred in the emergency room of EAMC. Dr. Crosby worked exclusively in that emergency room and had no private practice.
Medlin argues that the trial court erred in applying subsection (c) of § 6-5-548 to the facts before it. As stated previously, subsection (c) provides that in order to testify against a health care provider whose acts created the cause of action, the "similarly situated health care provider" (1) must be licensed to practice medicine in this or another state, (2) must be trained and experienced in the same specialty as the defendant "health care provider," (3) must be board certified in the same specialty, and (4) must have practiced in the same specialty during the year preceding the alleged breach.
Medlin argues that, because Dr. Crosby was not board certified in emergency medicine, this case, factually, falls outside of subsection (c) and should have been determined under subsection (b). Subsection (b) applies when the defendant "health care provider" (1) is not certified as a specialist, (2) is not trained or experienced in a specialty, or (3) does not hold himself out as a specialist. § 6-5-548(b).
Dr. Crosby contends that the trial court properly applied subsection (c). Subsection (c) applies when the defendant "health care provider" (1) is certified as a specialist, (2) is trained and experienced in a specialty, or (3) holds himself out as a specialist. Id. (c). He contends that the trial judge interpreted the statute according to the plain language, which requires a "similarly situated health care provider" to be board certified in the same specialty as the defendant "health care provider."
Our interpretation of the statute leads us to conclude that the trial court must answer three questions before deciding whether a proffered expert witness qualifies as a "similarly situated health care provider" within the meaning of the statute: (1) What is the standard of care alleged to have been breached? (2) Is the defendant "health care provider" a specialist in the discipline or school of practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert witness qualify as a "similarly situated health care provider" under the subsection determined in the second step to apply.
First, a trial court must determine the standard of care the defendant "health care provider" allegedly breached. In the instant case, Medlin alleged that Dr. Crosby did not properly diagnose Mrs. Shoffeitt's heart attack because, she says, he failed to take a proper history and failed to perform the tests required by the situation. Specifically, Medlin alleged that, when Dr. Crosby saw Mrs. Shoffeitt in the emergency room, he negligently failed to take an adequate history of her complaints, which included nausea, fatigue, and dizziness. She also alleged that he negligently failed to perform an adequate physical examination and that he negligently failed to rule out that Mrs. Shoffeitt was suffering a myocardial infarction, through his failure to do enzyme studies and an electrocardiogram. The standard of care to be applied in the instant case is that of a "health care provider" practicing emergency medicine.
After determining the standard of care alleged to have been breached, the trial court must next determine whether the defendant "health care provider" is a specialist, as defined in subsection (c), in that discipline, i.e., emergency medicine, or not a specialist, as defined in subsection (b). In the instant case, the appropriate specialty *Page 1294 
is emergency medicine, the discipline Dr. Crosby was practicing when he allegedly breached the standard of care with regard to Mrs. Shoffeitt's treatment. The classification of the defendant "health care provider" as a specialist determines the qualifications required of an expert witness who is a "similarly situated health care provider"; therefore, before a trial court can decide whether a particular expert is qualified to testify, the court must determine whether the defendant "health care provider" is to be treated as a specialist under § 6-5-548(c).
In order for a defendant "health care provider" to be classified as a specialist under subsection (c), the defendant "health care provider" must (1) be board certified, (2) be trained and experienced in the specialty, or (3) hold himself out as a specialist. § 6-5-548(c). The criteria by which a defendant "health care provider" is to be classified as a specialist are joined by the disjunctive conjunction "or." The plain-language interpretation of the statute would appear to be that the defendant "health care provider" need meet only one of the requirements to qualify as a specialist under subsection (c).
Subsection (b), on the other hand, applies to a defendant "health care provider" who (1) is not board certified in a specialty; (2) is not trained and experienced in a specialty;or (3) does not hold himself out as a specialist. Again, the legislature chose to join the determinate criteria with the disjunctive conjunction "or." The meaning, seemingly, is that if the defendant "health care provider" meets one of the criteria — e.g., is not board certified in a specialty — he comes within subsection (b). When read together, subsections (b) and (c) seem to create an anomaly that allows the defendant "health care provider" to come within both subsections. The determination by the trial court of which subsection to apply, as in the instant case, can be dispositive of a plaintiff's case.
The instant case is illustrative of this incongruous result in the application of the plain meaning of the statute. Dr. Crosby, who is board certified in family medicine, practiced medicine for approximately five years prior to the incident giving rise to this action. At the time of the incident, he was working for a private company that contracted out his services to EAMC; he maintained no separate, regular private practice. Apparently, the trial court applied subsection (c) because Dr. Crosby was board certified and had experience in practicing emergency medicine. The question before this Court is whether the trial court applied the correct subsection of § 6-5-548 in classifying Dr. Crosby as a specialist and thereby disqualifying Dr. Borak, Medlin's expert witness, as a "similarly situated health care provider."
Before discussing whether the trial court applied the correct subsection, we will examine Dr. Crosby's qualifications in relation to the determinate criteria of subsection (c): (1) whether he is board certified in the appropriate specialty; (2) whether he has training and experience in the specialty; and (3) whether he holds himself out as a specialist.
Dr. Crosby is board certified in family medicine; however, the alleged breach of standard of care occurred while Dr. Crosby was engaged in practicing emergency medicine. We hold, for purposes of determining whether a "health care provider" is a "specialist," that the trial court should look to whether the defendant "health care provider" is board certified in the specialty or discipline or school of practice that covers the area of the alleged breach. Therefore, Dr. Crosby, who is not board certified in emergency medicine, does not meet the first criterion of subsection (c) for determining whether he is to be treated as a specialist.
The next criterion is whether Dr. Crosby is trained and experienced in the specialty. Dr. Crosby testified in his deposition that he received his medical degree from the University of Alabama in 1982. He completed his residency in 1985 and was certified in family medicine that year. Thereafter, he practiced family medicine in Starkville, Mississippi, before beginning work at EAMC as an emergency room physician in June 1986. Dr. Crosby had practiced *Page 1295 
in the emergency room for more than two and one-half years prior to the incident at issue; we hold that this is sufficient to meet the "training and experience" requirement of subsection (c).
The last criterion to be determined is whether Dr. Crosby "holds himself out as a specialist." The statute does not define the phrase "holds himself out." Other jurisdictions have defined the term as meaning "assertive conduct directed towards the public . . . with a view to establishing a physician-patient relationship," People v. Shokunbi, 89 Ill. App.2d 53,58, 232 N.E.2d 226, 229 (1967), and as a " 'communication of the fact that service is available to those who may wish to use it,' " Vincent v. United States,58 A.2d 829, 831 (D.C. Mun. App. 1948) (quoting Northeastern Lines, Inc., Common Carrier Application, 11 M.C.C. 179, 182 (1939)). We hold that the phrase "holds himself out as a specialist," within §6-5-548, means that the defendant "health care provider" has taken affirmative steps to present himself to the public as a specialist.
Dr. Crosby contracted his services to Alabama Emergency Response Administrative Services, which in turn had a contract with EAMC to provide physicians for the emergency room. Dr. Crosby was not listed in the telephone book as a physician and had no established private practice. In response to a question regarding whether he held himself out as a physician, Dr. Crosby responded: "Unless they ask, I'm just Dell Crosby." Under these facts, we hold that Dr. Crosby had not taken steps to present himself to the public as a specialist in emergency medicine; therefore, he does not meet the third criterion under subsection (c).
Dr. Crosby qualifies under the plain language of subsection (c) as a specialist, because he meets the second criterion, in that he is "trained and experienced" in a specialty, and the criteria of subsection (c) are joined with the disjunctive "or," indicating that the defendant "health care provider" need meet only one of the criteria to qualify as a specialist. However, Dr. Crosby also meets the criteria of subsection (b) because he is not board certified in the specialty of emergency medicine and does not hold himself out as a specialist.
If, under subsection (c) of the statute, Dr. Crosby is to be treated as a specialist, the "similarly situated health care provider" expert witness, in order to testify as to the standard of care alleged to have been breached, not only must be properly licensed and practicing in the specialty during the year preceding the alleged breach, but must also be trained and experienced in emergency medicine and be board certified in emergency medicine. Seemingly, in order to testify as to the alleged standard of care, the "similarly situated health care provider" expert must be more "specialized" than the defendant "health care provider." We find that this disparate treatment was not intended by the legislature.
The legislature stated that the purpose of the statute was "to establish a relative standard of care for 'health care providers.' " § 6-5-548(e). The plain language of the statute, which allows a defendant "health care provider" to fall into both subsections, produces the effect of having a doctor with a certain set of credentials being held to a standard of care set by a "similarly situated health care provider" with different credentials and experience, depending upon whether or not he is classified as a specialist. The purpose, as expressed in subsection (e), is to require the plaintiff to establish the standard of care the defendant "health care provider" allegedly breached, by the testimony of an expert witness with approximately the same level of specialization. Because the specialist "similarly situated health care provider," as defined in subsection (c), must be board certified and trained in the specialty at issue — as well as be licensed to practice medicine and actually be practicing during the year preceding the alleged incident — we find that the disjunctive conjunction "or," used in subsection (c) to describe the defendant "health care provider" as a specialist, should be read as the conjunctive conjunction "and."
 "It is familiar law in the interpretation of statutes, constitutional amendments and *Page 1296 
other writings, that the intent of such writing is the substance, and the verbiage is mere form, and courts are at liberty in ascertaining the intent to hold that the disjunctive conjunction 'or' and the conjunctive conjunction 'and,' sometimes carelessly used, are interchangeable, to discover the intent of the writing. Hilliard v. Binford's Heirs, 10 Ala. 977, 996; Harris v. Parker, 41 Ala. 604, 615, 616; Porter v. State, 58 Ala. 66; Rutland v. Emanuel, 202 Ala. 269, 80 So. 107."
In re Opinion of the Justices No. 93, 252 Ala. 194, 198,41 So.2d 559, 563 (1949).
In summation, because the plain language of the statute allows a defendant "health care provider" to fall into both subsections, we hold that the portion of subsection (c) that describes the defendant "health care provider" as a specialist is to be read in the conjunctive, requiring all three standards — (1) board certification as a specialist in the specialty at issue; (2) training and experience in the specialty at issue; and (3) holding himself out as a specialist in the specialty at issue — to be met before a defendant "health care provider" will be classified as a specialist, thus requiring the plaintiff to retain an expert that meets the qualifications of "similarly situated health care provider," defined in subsection (c). Under the above interpretation of the statute, Dr. Crosby falls within subsection (b); therefore, Medlin's expert witness must meet the definition of a "similarly situated health care provider" under subsection (b).
Subsection (b) requires a "similarly situated health care provider" expert witness (1) to be licensed by the appropriate regulatory board or agency of this or some other state, (2) to be trained and experienced in the same discipline or school of practice, and (3) to have practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred. Medlin's proffered expert, Dr. Borak, meets the requirement of (b)(1), because he is licensed by the states of New York and Connecticut. He began to practice emergency medicine in 1978, and, since 1983, he has served as an assistant clinical professor at Yale Medical School, instructing medical students in emergency medicine and occupational medicine. Dr. Borak currently runs his own business, one that prepares and presents educational and training programs in emergency response planning for industrial accidents and medical and paramedical response issues. We hold that this experience is sufficient to meet the requirements of subsection (b)(2).
Subsection (b)(3) requires that the "similarly situated health care provider" is to have practiced "in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred." Section 6-5-548 does not explain what is meant by "practice of medicine." However, § 34-24-50, Ala. Code 1975, defines "[to] practice . . . medicine" as "[t]o diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." Ala. Code 1975, § 34-24-50(1).
Dr. Borak, in his deposition, testified that during the year preceding Dr. Crosby's alleged breach, Dr. Borak saw patients in the emergency department for the purpose of teaching. His responsibilities included seeing patients who presented in the emergency room and participating in the diagnosis and the treatment of the patient. Although Dr. Borak testified that the majority of his time was spent working with his company, that fact would not disqualify him as an expert witness, because the statute does not specify the amount of time spent practicing or the nature and quality of the practice. Therefore, we hold, for the purposes of determining whether Dr. Borak qualifies as a similarly situated health care provider, that Dr. Borak practiced emergency medicine during the year preceding Dr. Crosby's alleged breach.
Therefore, we hold that the trial court erred in entering the summary judgment, because Dr. Crosby is not a specialist within the intended meaning of subsection (c), and Dr. Borak clearly meets the subsection *Page 1297 
(b) requirement for an expert witness "similarly situated health care provider."
Medlin raises several constitutional challenges to § 6-5-548. However, this Court "will not consider the constitutional validity of statutes, unless the question is presented and is essential to a disposition of the case." City of Mobile v. GulfDevelopment Co., 277 Ala. 431, 439, 171 So.2d 247, 255 (1965).
We reverse the trial court's summary judgment and hold that Dr. Borak is qualified to testify as to the standard of care Dr. Crosby is alleged to have breached.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.