The plaintiff, Jimmie Ruth Hood, appeals from a judgment based on a jury verdict in favor of the defendant, Dr. Donald F. Slappey.
The issues in this medical malpractice case are whether the trial court erred in giving certain charges to the jury and whether the defendant's expert witness was a "similarly situated health care provider."
Hood was first examined by Dr. Slappey on June 13, 1985. Hood's doctor had referred her to Dr. Slappey because she had been having pelvic pain and bleeding from *Page 982 
the uterus. Dr. Slappey specializes in gynecology, the treatment of diseases of the female reproductive system. Dr. Slappey is not board certified in a specialty. He told Hood that surgery was necessary. There is a dispute as to what he told Hood about her surgery. Hood contends that he told her that he was going to remove her appendix along with her uterus. Dr. Slappey testified that he told Hood that he would remove her appendix if it was involved in her pain.
On June 24, 1985, Dr. Slappey removed Hood's uterus, both ovaries, and her fallopian tubes. He did not remove Hood's appendix. Hood testified that Slappey stated that he did remove her appendix. Dr. Slappey stated that he never discussed removing Hood's appendix with her or her family. He also stated that he did not discuss her appendix with her during any post-surgery office visits.
On April 22, 1989, Hood went to a hospital emergency room with abdominal pains. The doctor at the emergency room, Dr. Stephen Isbell, examined Hood. Hood told Dr. Isbell, a general surgeon, that she had had her appendix removed in 1985. When Hood's condition failed to improve, Dr. Isbell performed exploratory surgery and discovered that Hood's appendix had not been removed and that it was perforated. Dr. Isbell removed Hood's appendix.
Hood sued Dr. Slappey, alleging medical malpractice and fraud. Specifically, Hood claimed that Dr. Slappey had breached the applicable standard of care by stating that he had removed her appendix when, in fact, he had not.
At trial, Dr. Slappey asked that Dr. Isbell, a general surgeon, be allowed to testify as an expert on the applicable standard of care for gynecological patients. The trial court allowed Dr. Isbell to testify to the standard of care in gynecological surgery, over Hood's objection. Dr. Isbell stated that Dr. Slappey did not breach the applicable standard of care. He stated that Dr. Slappey did not have a duty to tell Hood that he removed her appendix unless she asked him. Also, Dr. Isbell stated that Hood's statement that she had had an appendectomy did not delay him in deciding to perform exploratory surgery.
The trial court charged the jury in pertinent part as follows:
 "In considering the claim of negligence, I charge you that Dr. Slappey did not guarantee the success of his treatment, and he has fulfilled his duty to Mrs. Hood if he prescribed a proper treatment, even though it did not produce good results.
 "Where there are various recognized methods of treatment, the physician is at liberty to follow the recognized method of treatment which he thinks is best, although witnesses have given their opinion that some other method would have been preferable.
 "I charge you that medicine is not an exact science. Members of the medical profession are allowed to have within certain bounds varying opinions on medical matters. Where there is more than one accepted alternative course of action that a doctor may reasonably take that would be recognized by the profession as proper and in keeping with the required standard of care, then, within these bounds, the doctor is allowed to use his judgment in pursuing a given course of treatment where there are two or more recognized accepted courses of treatment. He may do this so long as his actions are in keeping with the standard of care required by law. Thus, where there are various recognized methods of diagnosis and treatment, the doctor is at liberty to follow the recognized method or course of treatment which he thinks or deems best, although some other doctor may be of the opinion that some other method or course of treatment would have been preferable. Further, you should consider the judgment exercised by Dr. Slappey in light of all the attendant circumstances at the time he acted and not judge him in retrospect or simply by the results that were obtained.
 "A doctor does not guarantee nor insure the success of his treatment.
 "In determining whether a doctor was negligent in his diagnosis and treatment *Page 983 
of a patient, his judgment must be considered in the light of all of the facts and circumstances with which he was confronted at the time. A doctor is not to be judged by after-acquired knowledge about a result of his treatment, but the applicable test is whether, under all the facts and circumstances then confronting the doctor, the diagnosis and treatment he employed, which he administered to the patient, were those that a reasonably competent doctor in the same line of practice acting under the same or similar circumstances would have used at the time and under the conditions then existing. In other words, the test is not what hindsight may have revealed that should have been done in the light of subsequently occurring conditions."
The jury found in favor of Dr. Slappey on both claims. Hood appeals.
At the outset, we note that the Medical Liability Act of 1987 applies in this case. In determining whether the Medical Liability Act applies, the question is whether Hood's injury accrued prior to June 11, 1987, the effective date of the Act. A cause of action accrues when the act complained of results in injury to the plaintiff. Colburn v. Wilson, 570 So.2d 652 (Ala. 1990); Guthrie v. Bio-Medical Laboratories, Inc., 442 So.2d 92
(Ala. 1983). Although Dr. Slappey performed surgery on Hood in 1985, the alleged injury to Hood occurred in April 1989 when she suffered from appendicitis and was injured due to Dr. Slappey's alleged statements concerning the removal of her appendix. Therefore, Hood's cause of action accrued in April 1989.
Hood argues that Dr. Isbell, a general surgeon, was not a "similarly situated health care provider" within the meaning of § 6-5-548, Ala. Code 1975, for the purpose of testifying to the applicable standard of care that Dr. Slappey should have used. Because Dr. Slappey was not board certified in a specialty, §6-5-548(b) applies. Section 6-5-548(b) requires that a "similarly situated health care provider" expert witness (1) be licensed by the appropriate regulatory board or agency of this or some other state, (2) be trained and experienced in the same discipline, and (3) have practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred. Medlin v,Crosby, 583 So.2d 1290 (Ala. 1991). The standard of care allegedly breached by Dr. Slappey was that of a "health care provider" performing surgery, specifically a hysterectomy. Dr. Isbell was licensed and had practiced surgery the year before the date of Hood's alleged injury. Dr. Isbell was a similarly situated health care provider under the facts of this case.
Hood's second argument is that the trial court erred in giving certain charges to the jury. A party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for a new trial. Nunn v. Whitworth, 545 So.2d 766 (Ala. 1989). After thoroughly reviewing the instructions to the jury, we find none that were misleading or incorrect under the facts of this case.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.