The issue presented in this case is whether a prosthodontist is a "similarly situated health care provider," as defined in § 6-5-548, Ala. Code 1975, in relation to a general dentist, so that, as such, he may provide expert testimony regarding the standard of care in a dental malpractice case.
In April 1984, Dr. R. Clyne Adams, D.M.D., began providing Joyce M. Rodgers with general dental treatment. Dr. Adams is a dentist practicing in Cullman, Alabama, and is licensed by the State of Alabama to practice general dentistry. In November 1990, he inserted a bridge on the right side of Rodgers's mouth. Soon thereafter, Rodgers began complaining of pain in her mouth, and she saw Dr. Adams 10 times in the following 4 months to try to alleviate her problems. While Dr. Adams continued to provide Rodgers with dental treatment, he could not find the cause of her pain. Dr. Adams last saw Rodgers on April 22, 1991.
In August 1991, Rodgers sought treatment at the office of faculty practice at the University of Alabama at Birmingham ("UAB"), from a prosthodontist, Dr. Dean Ramus, D.D.S., because of continuing problems with her teeth. Dr. Ramus is licensed to practice general dentistry,[1] is certified in prosthodontics, and currently teaches at the University of Southern California ("USC") School of Dentistry. Dr. Ramus treated Rodgers on numerous occasions following her initial visit, and, eventually, he corrected the problem.
In August 1992, Rodgers sued Dr. Adams, seeking monetary damages for severe pain and emotional distress she says were caused by what she contends was an improperly installed and adjusted bridge and also for improper use and/or removal of cement in her mouth. Dr. Adams filed a motion for summary judgment, stating in a supporting affidavit that he had met the applicable standard of care in treating Rodgers. In response, Rodgers submitted Dr. Ramus's expert affidavit stating to the contrary. Following additional discovery, Dr. Adams renewed his motion for summary judgment, alleging that Rodgers had presented no admissible evidence of malpractice, because, he contended, Dr. Ramus was not qualified to testify under Ala. Code 1975, § 6-5-548. On August 12, 1994, the trial court granted Dr. Adams's motion for summary judgment, holding that "Dr. Ramus was engaged in a practice that was totally different to that of Dr. Adams' practice." C.R. at 61.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether the summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner *Page 840 v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985); Ryan v.Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the "substantial evidence rule" (§12-21-12, Ala. Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989).
On appeal from the summary judgment, Rodgers contends that Dr. Ramus's affidavit raised genuine issues of material fact and thus made a summary judgment inappropriate. Dr. Adams argues that the qualifications of Dr. Ramus, the plaintiff's only proffered expert witness, do not conform to Ala. Code 1975, § 6-5-548, because, he says, Dr. Ramus is not a "similarly situated health care provider." For this reason, Dr. Adams contends that the affidavit submitted by Rodgers was inadmissible and that Rodgers, therefore, offered no admissible evidence in opposition to the motion for a summary judgment. See Swendsen v. Gross, 530 So.2d 764, 768 (Ala. 1988).
According to Alabama's general rule in medical malpractice cases, a physician's failure to comply with the standard of care can be established through: (1) expert medical testimony as to the proper medical treatment and procedure, or (2) layperson testimony in circumstances where the lack of proper treatment is "so apparent as to be within the comprehension of the average layman." Lollar v. Tankersley, 613 So.2d 1249, 1253
(Ala. 1993); Pruitt v. Zeiger, 590 So.2d 236, 237-38 (Ala. 1991);Swendsen v. Gross, 530 So.2d 764, 768 (Ala. 1988) (quotingPowell v. Mullins, 479 So.2d 1119, 1120 (Ala. 1985)). The trial court has considerable discretion in allowing or disallowing expert testimony, based on questions of competency, unless there has been palpable error. Lollar v. Tankersley,613 So.2d 1249, 1253 (Ala. 1993); see also Brown v. Lawrence,632 So.2d 462, 464 (Ala. 1994); Hall v. CSX Transp., Inc.,631 So.2d 1013, 1016 (Ala. 1994).
The Alabama Medical Liability Act of 1987 ("Medical Liability Act"), Ala. Code 1975, § 6-5-540 et seq., governs this action against Dr. Adams, who is a "health care provider" as defined in Ala. Code 1975, § 6-5-481(6) and § 6-5-542(1).[2] According to the Medical Liability Act, Rodgers's burden of proof in this dental malpractice action is to prove by substantial evidence that Dr. Adams "failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers
in the same general line of practice, ordinarily have and exercise in a like case." §§ 6-5-548(a) and -542(2); see, e.g., Charles W. Gamble, McElroy's Alabama Evidence § 84.01(7) (4th ed. 1991); Parker v. Collins, 605 So.2d 824, 826 (Ala. 1992);Dowdy v. Lewis, 612 So.2d 1149, 1151 (Ala. 1992); Medlin v.Crosby, 583 So.2d 1290, 1292 (Ala. 1991); Pruitt v. Zeiger,590 So.2d 236, 237 (Ala. 1991) (citations omitted) (emphasis added).
To support her claim of negligence, Rodgers presented the expert testimony of Dr. Ramus, another "health care provider." Under the Medical Liability Act, Dr. Ramus must be "similarly situated" as to Dr. Adams, and Dr. Adams argues that Dr. Ramus was not so situated, according to the statute. Ala. Code 1975, § 6-5-548(e). Thus, the question here is whether Dr. Ramus, a prosthodontist, was as to Dr. Adams, a general dentist, "similarly situated."
In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), this Court established an analytical framework for determining if an expert witness was properly qualified to testify in a medical malpractice case. Medlin requires that a trial court answer the following questions before determining whether a proffered *Page 841 
expert witness is "similarly situated" as to the defendant health care provider:
 "(1) What is the standard of care alleged to have been breached? (2) Is the defendant 'health care provider' a specialist in the discipline or school of practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert witness qualify as a 'similarly situated health care provider' under the subsection determined in the second step to apply?"
Medlin, 583 So.2d at 1293.
First, we must decide what standard of care Dr. Adams is alleged to have breached. Id. Dr. Adams is a general dentist, whose practice deals with "the prevention, diagnosis, and treatment of diseases of the teeth, gums, and related parts, and with the replacement of missing teeth." 1 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder D-40 (1990). Dr. Ramus is a prosthodontist, whose practice is a "branch of dentistry dealing with artificial dental structures, as teeth, crowns, etc." 3 J.E. Schmidt, M.D., Attorney'sDictionary of Medicine and Word Finder P-346 (1990). Rodgers initially sought general dentistry treatment from Dr. Adams, and both parties agree that the standard of care breached was that of a "health care provider" performing general dentistry.
Second, we must determine whether Dr. Adams is a specialist, as defined in § 6-5-548(c), or not a specialist, see §6-5-548(b). Medlin, 583 So.2d at 1293; see also Hood v.Slappey, 601 So.2d 981, 983 (Ala. 1992). The classification of Dr. Adams as either a specialist or as not a specialist determines the statutory qualifications necessary for Dr. Ramus to be a "similarly situated" expert witness. Id. at 1294; seeDowdy v. Lewis, 612 So.2d 1149, 1151 (Ala. 1992). A defendant health care provider is deemed a specialist if he is: (i) board-certified as such, (ii) has training or experience in a particular area or specialty, and[3] (iii) holds himself out as being a specialist. Medlin, at 1294-95. Because Dr. Adams practices general dentistry and is not board-certified, he is not a specialist under the statute, and § 6-5-548(b) applies.
Third, we must determine whether Dr. Ramus is "similarly situated" according to the requirements of the applicable subsection of § 6-5-548, which here is subsection (b). Id.
Section 6-5-548(b) states:
 "[A] 'similarly situated health care provider' is one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same discipline or school of practice; and
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred."
See Medlin, 583 So.2d at 1296. While the trial court incorrectly applied § 6-5-548(c), its analysis was consistent with § 6-5-548(b), so this mistake was not in itself grounds for reversal.
Dr. Ramus, Rodgers's proffered expert, meets the first requirement of § 6-5-548(b)(1), because he is licensed to practice dentistry in Alabama and in a few other states. Dr. Ramus received his dental degree from U.S.C. in 1981 and has been licensed in Alabama since 1984. Between 1985 and 1987, he obtained additional training in prosthodontics at the University of Alabama, and, about 1991, became board-certified in that specialty. From 1988 to 1993, he was a faculty member at the UAB dental school, and he currently teaches at the U.S.C. School of Dentistry, where he maintains a faculty practice one day per week. Because Dr. Ramus was trained and experienced in general dentistry before he obtained his additional training in the specialty of prosthodontics, we hold that this experience is sufficient to meet the requirements of subsection (b)(2). *Page 842 
The main dispute here involves the third requirement of §6-5-548(b). To be "similarly situated," Dr. Ramus must have been practicing "in the same discipline or school of practice" as Dr. Adams in the year before the alleged malpractice.Medlin, 583 So.2d at 1296. While § 6-5-548 does not define "practice of medicine," § 34-24-50(1), Ala. Code 1975, defines "practice of medicine" as "[t]o diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." See Medlin, 583 So.2d at 1296.
Rodgers argues that Dr. Ramus's practice, while concentrated mostly on prosthodontics, also incorporated some aspects of general dentistry, and, therefore, that, as Dr. Ramus testified, he was familiar with the standard of care applicable to a general dentist. Dr. Adams contends that because Dr. Ramus was practicing prosthodontics in the year before the alleged incident, as opposed to general dentistry, then Dr. Ramus is not qualified to be an expert witness, because the two practices are different.
In Medlin, a plaintiff sued the attending emergency room physician, Dr. J. Dell Crosby, who was board-certified in family medicine, for misdiagnosing a deadly heart condition.Medlin, 583 So.2d at 1292. At trial, the plaintiff proffered an expert, Dr. Jonathan Borak, who was board-certified in internal medicine, but who had previously practiced emergency medicine and had been teaching emergency medicine in the year before the incident. Id. Dr. Crosby contended, and the trial court agreed, that Dr. Borak was not a "similarly situated health care provider" under § 6-5-548(c), because he was not board-certified in family medicine, as was Dr. Crosby. Id.
However, in reversing the judgment of the trial court, this Court held that the standard of care at issue involved a " 'health care provider' practicing emergency medicine," a field in which neither Dr. Crosby nor Dr. Borak was a specialist. Id.
at 1293. As a result, § 6-5-548(b) applied, instead of §6-5-548(c), and Dr. Borak was allowed to testify. Id. at 1296.
The Medical Liability Act does not require that the defendant health care provider and the expert witness have identical training, experience, or types of practice, or even the same specialties. To be "similarly situated," an expert witness must be able to testify about the standard of care alleged to have been breached in the procedure that is involved in the case. Cf. Medlin, 583 So.2d at 1294. For example, if the parties were reversed in this case, so that the prosthodontist, Dr. Ramus, was the defendant and the general dentist, Dr. Adams, was the expert, we would reach the same result. Dr. Adams would be allowed to testify because the standard of care alleged to have been breached involved general dentistry and not prosthodontics; section 6-5-548(b) would apply in that reversed situation. Also, a general surgeon would be qualified to testify that an orthopedic surgeon breached the standard of care if the procedure was common to both disciplines, as is the case here. Craig v. Borcicky, 557 So.2d 1253, 1256 (Ala. 1990) (citing Wozny v. Godsil, 474 So.2d 1078, 1081 (Ala. 1985)). Specifically, if the incident involved an alleged negligent suturing of an incision, a general surgeon would be qualified to testify that an orthopedic surgeon had breached the standard. See Olsen v. Rich, 657 So.2d 875 (Ala. 1995).
Both a general dentist and a prosthodontist are qualified to perform the procedure made the basis of this action. During the year before Dr. Adams's alleged breach, Dr. Ramus was a faculty member at UAB, where he taught classes, performed and published research, oversaw patient treatment by dental students, and engaged in a faculty practice one day a week. Dr. Ramus testified in his deposition:
 "Q: The year . . . prior to this incident, which was in November of 1990, so the year prior to that, you were practicing prosthodontistry, weren't you?
"A: Prosthodontics, yes.
 "Q: You were not practicing general dentistry during that time frame?
 "A: Well, as a prosthodontist you specialize, for example, you're not doing root canals, you're not doing parodontal surgery, *Page 843 
but basically you're doing a lot of general dentistry as well. At least I was doing some general dentistry as well.
 "Q: But when I asked you yesterday 'You were not practicing general dentistry?' your answer [was] 'That's correct.'
 "A: Okay. I'm saying now that general dentistry is included in — Again, it's how you define your terms. As a prosthodontist you specialize, but you would still do amalgams and fillings and simple restorative procedures. They're not outside the purview of prosthodontists."
C.R. at 52. Although Dr. Ramus testified that the majority of his practice was devoted to prosthodontics, this fact would not disqualify him, because his practice did, at times, incorporate some aspects of general dentistry, and the statute does not specify the amount of time that must be spent practicing or the nature and quality of the practice. See Medlin, 583 So.2d at 1296; Dowdy v. Lewis, 612 So.2d 1149, 1151-52 (Ala. 1992). Furthermore, by Dr. Adams' own admission, prosthodontics incorporates general dentistry procedures.
Therefore, we hold that the trial court erred in entering the summary judgment, because Dr. Ramus meets the subsection (b) requirement that an expert witness be a "similarly situated health care provider." We reverse the trial court's summary judgment and hold that Dr. Ramus is qualified to testify as to the standard of care Dr. Adams is alleged to have breached.
REVERSED AND REMANDED.
MADDOX, ALMON, INGRAM, COOK and BUTTS, JJ., concur.
[1] Dr. Ramus is licensed to practice dentistry in Alabama, Arizona, California, and Utah.
[2] Under § 6-5-481(6), a "dentist" is defined as "[a]ny person licensed to practice dentistry in Alabama." Under §6-5-542(1), a "health care provider" is defined as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481."
[3] While the exact statutory language of § 6-5-548(c) includes the word "or" between these three qualifications, this Court inMedlin v. Crosby, 583 So.2d 1290 (Ala. 1991), held that the legislative intent would be better served by reading the word "or" as "and."