MADDOX, Justice.
This case involves alleged dental malpractice, and the sole issue presented is whether the trial court erred in determining that the plaintiffs expert witness was a “similarly situated health care provider” within the meaning of the Alabama Medical Liability Act of 1987, § 6-5-548(e), Ala.Code 1975.
The trial court declared a mistrial when the jury was unable to reach a verdict, and we granted the defendant dentist’s Rule 5, Ala.R.App.P., petition for permission to appeal. After the mistrial, the defendant filed motions styled as a motion for a judgment notwithstanding the- verdict and as a motion to alter, amend, or vacate the judgment. We have treated those motions as a motion for a judgment pursuant to the last sentence of Rule 50(b), Ala.R.Civ.P.[1]
The defendant, Dr. J.D. Biggers, D.M.D., is a general dentist licensed to practice in Alabama. Dr. Biggers performed oral surgery on the plaintiff, Tonia Johnson, extracting her right third molar. After the procedure was performed, Johnson developed an infection that required her to be hospitalized.
She sued Dr. Biggers, claiming that he had breached the appropriate standard of care by failing to administer antibiotics before her operation. At the trial, Johnson offered the testimony of Dr. Frank Nelson as that of an expert, to establish that the defendant had violated the standard of care applicable to a dentist extracting a right third molar.
Dr. Biggers challenged Dr. Nelson’s qualifications to testify as a “similarly situated health care provider,” but the trial judge permitted him to testify, stating, however, that the question whether he was a “similarly situated health care provider” was “a very, very, very close question” (R. 429).
The sole issue presented on this appeal is whether the evidence shows that Dr. Nelson was qualified, under the provisions of law, to testify as an expert. The evidence tends to show: 1) that Dr. Nelson obtained his dental degree in 1974; 2) that he has been continuously licensed to practice dentistry in Alabama since 1974; 3) that he trained in oral surgery for three years at the University of Alabama in Birmingham (“UAB”) from 1974 through 1977; and 4) that he retired from the “hands-on” practice of dentistry in 1981, when he began to suffer from a nerve disorder that caused his hands to go numb, but that before 1981, he had performed several tooth extractions similar to the one involved in the current action.
Dr. Nelson further testified that, in the year preceding June 18,1990, the date of Dr. Biggers’s alleged malpractice, he was an attorney practicing law in Mountain Brook, Alabama, approximately 80% of his working *110 time, but that he also performed part-time dental consulting work. Dr. Nelson did not own his own dental office in 1989-1990, although he did maintain a consulting office in his home.
The Alabama Medical Liability Act, § 6-5-548, Ala.Code 1975, requires that an expert testifying against a doctor or dentist in a medical malpractice case be a “similarly situated health care provider”:
“§ 6-5-548. Burden of proof; reasonable care as similarly situated health care provider; no evidence admitted of medical liability insurance.
“(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.
“(b) If the health care provider whos'e breach of the standard of care is claimed to have created the cause of action is not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a ‘similarly situated health care provider’ is one who:

“(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and

“(2) Is trained and experienced in the same discipline or school of practice; and

“(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.

“(c) If the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a ‘similarly situated health care provider’ is one who:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
“(2) Is trained and experienced in the same specialty; and
“(3) Is certified by an appropriate American board in the same specialty; and
“(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.
“(d) No evidence shall be admitted or received, whether of a substantive nature or for impeachment purposes, concerning the medical liability insurance, or medical insurance carrier, or any interest in an insurer that insures medical or other professional liability, of any witness presenting testimony as a ‘similarly situated health care provider’ under the provisions of this section or of any defendant.
“(e) The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he is a ‘similarly situated health care provider’ as defined above.”
(Emphasis added.)
Was Dr. Nelson a “similarly situated health care provider,” as defined by the Alabama Medical Liability Act, in the year preceding June 18, 1990? That is the question we must answer.
The Alabama Medical Liability Act, Alabama Code 1975, §§ 6-5-480 to 6-5^488, 6-5-540 to 6-5-552, establishes the requirements for bringing a medical malpractice action against a health care provider. The Act places the burden of proof on the plaintiff to show, by substantial evidence, that the health care provider failed to exercise such reasonable care, skill, and diligence as similarly situated health care providers in the same general line of practice. In Medlin v. Crosby, 583 So.2d 1290, 1293 (Ala.1991), this Court stated:
*111 “Our interpretation of the statute leads us to conclude that the trial court must answer three questions before deciding whether a proffered expert witness qualifies as a ‘similarly situated health care provider’ within the meaning of the statute: (1) What is the standard of care alleged to have been breached? (2) Is the defendant ‘health care provider’ a specialist in the discipline or school or practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert witness qualify as a ‘similarly situated health care provider’ under the subsection determined in the second step to apply?”
Johnson alleges that the defendant, Dr. Big-gers, did not properly diagnose acute perico-ronitis,[2] because, she says, he failed to take a proper history and failed to perform the proper tests that were required. She asserts that Dr. Biggers failed to take X-rays of her tooth and the surrounding tissue prior to the operation. Johnson also alleges that if Dr. Biggers had taken the X-rays he would have discovered an infection and would have known to administer preoperation antibiotics.
The standard of care to be applied in this case is that of a general dentist “health care provider” extracting a right third molar. Dr. Biggers admits in his brief that he is not a specialist.[3] The Act sets out the requirements for a nonspecialist expert who can testify at trial; the person must be one who:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
“(2) Is trained and experienced in the same discipline or school of practice; and
“(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.”
Ala.Code 1975, § 6-5-548(b).
Dr. Nelson meets the first two requirements of the statute, in that he was licensed by the State of Alabama to practice dentistry during the year proceeding the operation, and he was trained as a general dentist. The controversy arises over whether Dr. Nelson practiced “in the same discipline or school of practice” as Dr. Biggers during the year preceding June 18, 1990.
The Act does not define the practice of dentistry, for the purpose of determining whether or not a proffered expert is a “similarly situated health care provider,” and the definition of the practice of dentistry under the dental licensing and regulation provisions § 34-9-6, Ala.Code 1975, even if relevant, is not all that helpful.[4]
This is not the first time we have had this question of a “similarly situated health care provider” before us. In Rodgers v. Adams, 657 So.2d 838 (Ala.1995), this Court decided a similar case involving alleged dental malpractice, in which one of the questions presented was whether an expert witness was qualified to testify. In Rodgers the standard of care was that of a “health care provider” performing general dentistry. We reversed the trial court’s judgment and held that a doctor specializing in prosthodontics would be qualified to testify, as an expert, that a general dentist had breached the standard of care in regard to a particular procedure, if the procedure was common to both disciplines, citing Craig v. Borcicky, 557 So.2d 1253, 1256 (Ala.1990) (citing Wozny v. Godsil, 474 So.2d 1078, 1081 (Ala.1985)). 657 So.2d at 840. The standard of care alleged to have been breached in the Rodgers case involved general dentistry, and we reasoned that both a general dentist and a prosthodontist are qualified to perform the *112 procedure that was made the basis of the claim. We stated in the opinion:
“The Medical Liability Act does not require that the defendant health care provider and the expert witness have identical training, experience, or types of practice, or even the same specialties. To be ‘similarly situated,’ an expert witness must be able to testify about the standard of care alleged to have been breached in the procedure that is involved in the case. Cf. Medlin, 583 So.2d at 1294.”
Rodgers, 657 So .2d at 842.
Dr. Nelson testified during trial that he was a licensed dentist in the year proceeding June 18, 1990; that he performed several of the duties that are listed in the dental licensing and regulation provisions; that he spent 80% of his working time practicing law in Mountain Brook, Alabama; and that he spent 20% of his working time performing part-time dental consulting work; that he extracted teeth for his family and friends; that his dental practice consisted of doing consulting work for other dentists, relating to oral surgery, working on cases from law enforcement personnel, involving dental identifications, and advising attorneys as an expert witness; that he had, and currently operates, an I.R.S.-approved office in his home, with a separate entrance, a dental chair, and instruments; and that he was an adjunct professor at UAB and taught a class there on dental medical emergencies.
We agree with the trial court that the question whether to allow Dr. Nelson to testify is a “close one.” However, based on the considerations set out above, we cannot say that the trial judge abused his discretion in allowing Dr. Nelson to testify as an expert.
The trial court’s order denying a judgment is affirmed.
AFFIRMED.
SHORES, KENNEDY, INGRAM, COOK and BUTTS, JJ., concur.
ALMON and HOUSTON, JJ., concur in the result.

. “If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

. Inflammation or infection in the tissue around a tooth that is partially erupted.

. The Act establishes two definitions of a "similarly situated health care provider,” dependent upon whether the defendant doctor is a specialist or is a nonspecialist. § 6 — 5—548(b) and (c), Ala. Code 1975.

.The dental licensing and regulation statute is primarily concerned with the identification of dental operations or services that cannot he legally performed without a license. The requirements set out by the dental licensing and regulation provision of the Alabama Code clearly would require someone in Dr. Nelson's position to obtain a dental license from the State of Alabama.