[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 824 
Martha Cantrell and her husband William Cantrell, on behalf of their daughter, Laura Elizabeth Cantrell, sued Orthopaedic Associates of North Alabama, P.C. ("Orthopaedic Associates"), and HealthTrust, Inc. d/b/a Crestwood Hospital ("Crestwood"), after Laura was injured during a hip surgery performed by Dr. Howard Cobb Alexander. Dr. Alexander was employed by Orthopaedic Associates, and he performed the surgery at Crestwood.
The Cantrells alleged that Laura's sciatic nerve was injured during the October 28, 1990, surgery, either by being cut by the surgeon's scalpel or by the erroneous placement of retractors during the surgery. After the injury, Laura was forced to undergo several surgeries in attempts to correct the nerve damage, and she had to learn to walk again. She now walks with a permanent, severe limp due to numbness and disfigurement of her left leg and foot. The Cantrells alleged that either Dr. Alexander or Bobby Clark, a Crestwood operating room technician who assisted in the surgery, caused the injury. They further alleged that Crestwood had failed to properly train Clark.
The Cantrells' claims were submitted to a jury, which returned a verdict of $818,000 in compensatory damages in favor of the Cantrells against Crestwood, and a verdict against the Cantrells in favor of Orthopaedic Associates. Crestwood appeals from the judgment entered on the jury's verdict in favor of the Cantrells, and the Cantrells cross appeal from the judgment entered on the jury's verdict in favor of Orthopaedic Associates.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust.Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162
(Ala. 1988). In reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins. Co. v. McDonald,567 So.2d 1208, 1211 (Ala. 1990).
We will first address Crestwood's appeal. Crestwood maintains that the trial court erred in denying its motions for directed verdict and J.N.O.V., because, it contends, the Cantrells' claims were time-barred. It contends that the Cantrells brought this action in their names, instead of in Laura's name, and therefore that the action was subject to a two-year statute of limitations.
As noted above, the alleged negligence in this case took place during Laura's surgery on October 28, 1990. Laura was nine years old at the time of the surgery. Ala. Code 1975, §6-5-482(a), provides that medical malpractice actions must be commenced within two years of the alleged malpractice. However, § 6-5-482(b) states that § 6-5-482 *Page 825 
is subject to § 6-2-8, which provides that the running of the statutory limitations period is tolled in situations where the plaintiff is a minor. This Court, in Abernathy v. BrookwoodHealth Services, 534 So.2d 563 (Ala. 1988), held that the applicable limitations period for a minor plaintiff under §6-5-482 is four years after the claim arose. Laura's claim was filed on July 23, 1993, approximately two years and nine months after the claim arose. Crestwood bases its argument on the fact that the Cantrells styled their complaint "Martha Cantrell and William L. Cantrell, as parents and next best friends of Laura Elizabeth Cantrell, a minor child v. Orthopaedic Associates . . .", and that, as styled, the action was misleadingly commenced in the parents' own names, not the name of their child.
We agree with the Cantrells that the caption of this complaint was not misleading and did not make this case governed by § 6-5-482(a). Their action concerned only the injury sustained by Laura during her surgery, and they made no claim for damages on their own behalf. Because Laura was a minor, she could not bring the action herself. Laura's parents properly sued for her, as her "parents and next . . . friends." The Cantrells filed this action within four years of Laura's surgery; therefore, it was filed within the limitations period allowed for a minor plaintiff in medical liability cases under § 6-5-482(b). Abernathy v. Brookwood Health Services, supra. The trial court correctly held that this action was filed within the period allowed by the applicable statute of limitations.[1]
Crestwood next contends that the trial court erred in allowing the Cantrells' attorney to read to the jury portions of Dr. Alexander's deposition. Crestwood contends that, because the deposition was taken two weeks before Crestwood was added as a defendant in this action, the reading of the deposition at trial violated Ala.R.Civ.P. Rule 32(a). That rule provides that a deposition "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof."
This Court has interpreted Rule 32(a) as requiring that, in order for a deposition to be used at trial against a party, the party (1) must have been present at the deposition; or (2) must have been represented at the deposition; or (3) must have been given reasonable notice of the deposition. Chamlee v.Johnson-Rast Hays, 579 So.2d 580 (Ala. 1990). Crestwood was not present at, was not represented at, and was not given notice of, the deposition; this was because it was not a party to this action when the deposition was taken. However, Crestwood did not object to this evidence before it was admitted. Only after the attorney had read the deposition, which took up approximately 10 pages of the court reporter's transcript, did Crestwood complain:
 "CRESTWOOD'S ATTORNEY: Your honor, I would like the record to show and a request made to the jury that they not consider [the deposition] as far as Crestwood Hospital is concerned. We were not even a party to the case at that time, and so that deposition would not be binding on us.
 "THE COURT: I'm going to deny that request. The deposition has been placed into evidence already, or that portion of the testimony that was read is in evidence."
In Costarides v. Miller, 374 So.2d 1335 (Ala. 1979), this Court addressed the situation where a party had failed to object before a deposition was read to the jury. This Court held that the complaining party had failed to preserve the alleged error, stating: *Page 826 
 "A party who fails to object to matters at the trial level may not raise these matters for the first time as the basis for an appeal. An objection must be made and a ground stated therefor or the objection and error are deemed to have been waived. [Citations omitted.] . . .
 "The overruling of objections to question concerning matters already received into evidence without objection, is not reversible error."
374 So.2d at 1337.
Rather than objecting to the deposition before the attorney read it, Crestwood requested a limiting instruction after it had been read. Objections must be "raised at the point during trial when the offering of improper evidence is clear," see Charles W. Gamble, McElroy's Alabama Evidence § 426.01(3) (5th ed. 1996); Crestwood did not object at that point. Therefore, the alleged error was not preserved for review.
Crestwood next argues that the trial court erred in allowing the Cantrells to present testimony from their expert witness, Karen Edwards, concerning the standard of care the Cantrells allege was breached in this case. Issues at trial concerned whether Clark, the Crestwood operating room technician who assisted in the surgery, negligently used retractors and thereby caused Laura's injury, and whether Crestwood had negligently failed to train Clark in the use of retractors in surgery. Edwards, a registered nurse, testified concerning the standard of care applicable to operating room personnel and concerning the training of operating room personnel. Edwards stated that there was no evidence to show that Clark had received adequate training for him to properly function in Laura's surgery. She stated:
 "Based on the records, Crestwood did not meet the minimum standard of care because there is no evidence to show that Bobby Clark had any type of formalized process or a skills checklist to function as an O.R. tech or an assistant."
Crestwood maintains that Edwards was not a "similarly situated health care provider" and therefore could not properly testify regarding a medical standard of care, relying on Ala. Code 1975, § 6-5-548.
In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), this Court established a framework under § 6-5-548 for determining whether an expert witness is qualified to testify in a medical malpractice case. Pursuant to Medlin, the trial court must answer the following questions before determining that an expert witness is "similarly situated" as to the defendant:
 "(1) What is the standard of care alleged to have breached? (2) Is the defendant 'health care provider' a specialist in the discipline or school of practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert witness qualify as a 'similarly situated health care provider' under the subsection determined in the second step to apply?"
583 So.2d at 1293.
As to question (1) stated in Medlin, we will consider the standard of care alleged to have been breached here as that to be met by an operating room technician assisting in surgery. As to question (2), we note that although Clark has been trained in operating room procedure and is experienced in that procedure, he is not board-certified as an operating room technician and does not hold himself out as a specialist. Therefore, as to question (3), we must determine whether Edwards qualified as a "similarly situated health care provider." Section 6-5-548(b), as it read at the time of the trial in this case, provided:
 "[A] 'similarly situated health care provider' is one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same discipline or school of practice; and
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred."
Edwards testified that she began working as an operating room nurse in 1979, eventually becoming director of medical services *Page 827 
for a Regional Medical Center, a major hospital in Memphis, Tennessee; in her work she has both worked directly in operating rooms and overseen hospital departments. Edwards worked in operating rooms from 1979 through 1994. As director in Memphis, Edwards was responsible for 14 departments, including anesthesia, the trauma operating room, the burn operating room, elective surgery operating rooms, day surgery, and recovery for those departments, until she resigned in 1994. Edwards is a certified operating room nurse and surgical assistant, and she has held offices in the Association of Operating Room Nurses (AORN). She has given continuing education lectures on operating room safety and has written for national publications in her field.
Because one need not have a license to work as an operating room technician, clause (1) of § 6-5-548(b) does not apply. Edwards meets the requirement of clause (2), because she was trained as an operating room technician and had worked directly as an operating room technician during the period 1971-74, before she graduated from nursing school in 1975. However, Crestwood disputes Edwards's qualifications under clause (3), contending that because she has not worked as an operating room technician since 1974, but since that time has worked as a nurse and surgical assistant, she was not properly qualified to testify concerning Clark's standard of care.
We hold that Edwards was qualified to testify as to Clark's standard of care and as to the training he should have received from Crestwood, because of her training, experience, and practice as the director of medical services at Regional Medical Center in Memphis during the 12 months preceding the surgery in question. Her background, which included holding several offices with AORN, allowed her to testify with authority concerning the standards and guidelines set by that organization and by the Joint Commission for Accreditation of Hospitals Organization (JCAHO) concerning operating room procedure and training. Edwards's testimony demonstrated a knowledgeable familiarity with surgical procedure and hospital practice. In Rodgers v. Adams, 657 So.2d 838 (Ala. 1995), this Court noted that the experience and training of an expert witness and the experience and training of a defendant medical provider need not be exactly the same:
 "The Medical Liability Act does not require that the defendant health care provider and the expert witness have identical training, experience, or types of practice, or even the same specialties. To be 'similarly situated,' an expert witness must be able to testify about the standard of care alleged to have been breached in the procedure that is involved in the case."
657 So.2d at 842.
In Dowdy v. Lewis, 612 So.2d 1149 (Ala. 1992), this Court held that a trial court did not err in admitting the testimony of two expert witnesses — neither of whom had actively practiced nursing in the year preceding the alleged negligence — regarding the standard of care applicable in a nursing procedure. The experts were highly qualified nursing teachers. Edwards was similarly highly qualified. She was able to testify about "the standard of care alleged to have been breached" in this case, Rodgers, supra; therefore, the trial court did not abuse its discretion in allowing her to testify.
Crestwood next argues that the trial court erred in admitting a publication styled "Standards and Recommended Practices for Perioperative Nursing"; this was a 1986 publication of AORN. We find no error in the admission of this publication into evidence. It concerned in part the minimum requirements pertaining to the qualifications of staff working in an operating room. Edwards testified that the publication's "competency statements" require a health care provider to assign "activities to personnel based on their qualifications and patient needs"; this evidence was relevant to Crestwood's alleged failure to properly train Clark as an operating room technician. The trial court did not abuse its discretion in admitting this evidence.
Crestwood next contends that the evidence was insufficient to indicate that Clark was inadequately trained or that inadequate training caused Laura's injury. *Page 828 
Clark testified that he had received training in the use of retractors and had used them in numerous surgeries. He testified that he simply held the retractors where Dr. Alexander placed them. However, he also testified that Laura's surgery was the first surgery in which he had held retractors in a child's hip. He was unaware of the size of a child's sciatic nerve, and he testified that while he was assisting in the surgery he did not know the distance between Laura's sciatic nerve and her hip joint. As noted above, the Cantrells produced expert testimony from Edwards indicating that Crestwood was negligent in allowing Clark to assist in the surgery. There was evidence from which the jury could find that Laura's injury was probably caused by improper movement of the retractors. The parties presented conflicting evidence, which raised questions of fact for the jury, and we find the evidence sufficient to support the jury's verdict for the plaintiffs.
Last, Crestwood maintains that the jury was influenced by extraneous facts and that its verdict was an improper quotient verdict. In its motion for J.N.O.V. or a new trial, Crestwood produced affidavits from six jurors indicating that the jury returned a quotient verdict. One of the affidavits was from Juror J; her affidavit also indicated that she had asked her husband about the requirements for becoming an operating room technician and that based on what he said she had told her fellow jurors that on-the-job training was all that was needed. In response, the Cantrells produced eight juror affidavits stating that the verdict was a unanimous agreement and that the jurors had made no prior agreement in their deliberations to be bound by a quotient verdict. Three of the Cantrells' affidavits came from jurors who were contradicting their prior affidavits that had been submitted by Crestwood, including Juror J, although Juror J's second affidavit did not contradict her prior statements regarding what she had asked her husband and what he had said. The trial court struck the affidavits offered by Crestwood and held that there was no evidence to indicate that the jury had been influenced by extraneous facts.
Generally, affidavits are inadmissible to impeach a jury's verdict. Wiberg v. Sadoughian, 514 So.2d 940 (Ala. 1987). An affidavit showing that extraneous facts influenced the jury's deliberations is admissible; however, affidavits concerning "the debates and discussions of the case by the jury while deliberating thereon" do not fall within this exception.Alabama Power Co. v. Turner, 575 So.2d 551, 557 (Ala. 1991). We conclude that the trial court did not abuse its discretion in denying Crestwood's motion on these grounds. The affidavits in question reflected the debates and deliberations of the jury, and the trial court properly struck them as violating the general rule against the use of jurors' affidavits to impeach a verdict. As noted above, the Crestwood affidavits conflicted with the affidavits submitted by the Cantrells stating that no quotient verdict was reached. Further, as the trial court noted in its order, there was no evidence to show that the jury's verdict was influenced by Juror J's knowledge of extraneous facts concerning the requirements of an operating room technician. It stated in the order:
 "The Court determines that this portion of [Juror J's] affidavit does evidence extraneous facts brought into the jury room by her, but there is absolutely no further evidence in the affidavit nor none offered to the Court at the time of the hearing that it influenced or may have influenced any of the other jurors in this action or influenced the verdict in this action. The content of such allegation and affidavit in support thereof is such that its only reasonable interpretation is that it was in every respect favorable to the moving defendant in light of the facts in this case. There is no reasonable hypothesis here to the effect that the extraneous facts testified to in [Juror J's] affidavit in support of the defendant's motion did or even could have reasonably caused an effect on the verdict which would be prejudicial to the moving defendant. [Citations omitted.]"
As this Court stated in Fabianke v. Weaver, 527 So.2d 1253
(Ala. 1988), "To allow the deliberations of juries and the propriety of their discussions to be impeached by affidavits would . . . invite a veritable barrage of post trial affidavits, garnered and sought by *Page 829 
nonsuccessful litigants in search of reversible error." 527 So.2d at 1259, quoting Weekley v. Horn, 263 Ala. 364, 367,82 So.2d 341, 343 (1955).
For the foregoing reasons, the judgment for the Cantrells against Crestwood is affirmed. The Cantrells have stipulated that if this Court affirms their judgment against Crestwood, then they wish to dismiss their cross appeal as to Orthopaedic Associates. That cross appeal is therefore dismissed.
1941716 — AFFIRMED.
1941776 — DISMISSED.
MADDOX, SHORES, and SEE, JJ., concur.
HOUSTON and COOK, JJ., concur in the result.
HOOPER, C.J., recuses.
[1] In regard to Justice Houston's opinion concurring in the result in this case, it should be pointed out that, according to this Court's holding in Abernathy v. Brookwood HealthServices, supra (in which Justice Houston concurred), and the provisions of § 6-5-482(b), it is clear that § 6-2-8 applies in medical malpractice cases. The Abernathy Court expressly noted that § 6-5-482(b) recognizes the applicability of the § 6-2-8
exception, and correctly recognized that the four-year provision of § 6-5-482(b) limits the § 6-2-8 exception.Abernathy, supra, at 564. The result is the same; the four-year statute of limitations applies in this case. However, to state that § 6-2-8 "does not apply in medical liability actions" is to disregard both the express reference to that statute in §6-5-482(b), and this Court's holding in Abernathy.