534 So.2d 250 (1988)
Terry Allen MOORE and Mary Moore
v.
Robert M. AVERI.
86-1280.
Supreme Court of Alabama.
September 30, 1988.
William S. Stone of Stone & Stewart, Blakely, Ga., J.R. Herring of Herring & Bennett, Dothan, for appellants.
Wade H. Baxley of Ramsey, Baxley & McDougle, Dothan, for appellee.
ALMON, Justice.
Terry Allen Moore and Mary Moore, husband and wife, brought this action against *251 Dr. Robert M. Averi, a podiatrist, for injuries allegedly arising out of Dr. Averi's treatment of Mr. Moore's foot.[1] While this action was pending, this Court held in Sellers v. Picou, 474 So.2d 667 (Ala.1985), that podiatrists are not subject to the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-480 et seq., and that, therefore, that Act's two-year statute of limitations does not apply to actions against podiatrists. Sellers held that the action was governed by the one-year statute of limitations found in § 6-2-39, which has been repealed by Act No. 85-39, 1984-85 Ala. Acts, effective January 9, 1985. After Sellers was released, Dr. Averi filed a motion for judgment on the pleadings or, in the alternative, summary judgment, on the ground that the action was barred by the statute of limitations. This action was filed more than one year, but less than two years, after Dr. Averi performed surgery on Mr. Moore. The trial court granted summary judgment for Dr. Averi.
After Dr. Averi filed his motion for summary judgment, the Moores amended their complaint. The complaint as amended alleged that Dr. Averi breached an express contract to provide services with the degree of skill and care usually and customarily provided by competent podiatrists;[2] that Dr. Averi was negligent in the performance of a surgical procedure on Mr. Moore's foot; and that Dr. Averi fraudulently concealed the fact that his failure to use reasonable care caused injury to Mr. Moore's foot.
The Moores argue that the summary judgment is due to be reversed for any of the following reasons: (1) the complaint stated a cause of action in contract as to which the statute of limitations had not run; (2) the complaint is not time-barred because it was filed within one year of Dr. Averi's last treatment of Mr. Moore for the same illness; (3) Dr. Averi's fraudulent concealment of the fact that he had injured Mr. Moore's foot tolled the running of the statute of limitations.
If none of these arguments is correct, the one-year statute of limitations bars the action. Dr. Averi performed surgery on Mr. Moore's foot on December 8, 1983, and followed his progress until February 6, 1984, the date of Mr. Moore's last visit. Mr. Moore filed suit on January 25, 1985. The extension of the statute of limitations for general tort actions to two years, effective January 9, 1985, cannot revive this action if the period of limitations expired on December 8, 1984. Ala.Const. 1901, § 95.

I
The Moores do not argue for an implied contract. See Lemmond v. Sewell, 473 So.2d 1047 (Ala.1985); and Garig v. East end Memorial Hospital, 279 Ala. 118, 182 So.2d 852 (1966). As to the claim that there was an express contract, the only written evidence of any contract between Dr. Averi and Mr. Moore refutes the contention that the contract included any express promise by Dr. Averi of successful treatment. The "consent to operation" form signed by Mr. Moore included the following language: "The nature and purpose of the operation [have] been fully explained to me. I acknowledge that no guarantee or assurance has been made as to the results that may be obtained."
The Moores allege, however, that Dr. Averi expressly contracted to exercise the degree of skill ordinarily used by podiatrists and that he breached that express contract. They cite the following deposition testimony by Dr. Averi:
"Q. Did you ever indicate to [Mr. Moore] either verbally or otherwise that you possessed the ordinary skill of podiatrists licensed to practice in Alabama?
"A. Yes.
"Q. And did you indicate to him either expressly or by your conduct that you would exercise that degree of skill ordinarily exercised by podiatrists in performing the surgery on him?
*252 "A. Of course."
Whether this evidence, standing alone, is sufficient to establish a factual issue with respect to an express contract by Dr. Averi to use due care, we need not decide. The evidence as a whole clearly demonstrates that a genuine issue of material fact exists on this aspect of the contract claim, and that Dr. Averi is not entitled to judgment as a matter of law. Rule 56(c), A.R.Civ.P.
The Moores argue that Dr. Averi, in his deposition testimony, "demonstrated his incompetence and woeful ignorance of bone physiology and healing properties." They make this assertion based on the affidavit of Dr. Kermit Ary, who treated Mr. Moore after he left the care of Dr. Averi, and on the podiatric literature attached to Dr. Ary's affidavit.
Dr. Averi was unable at his deposition to cite any authority supporting the method he used to treat Mr. Moore. One of the authorities cited by the Moores, O.A. Mercado, D.P.M., teaches at Illinois College of Podiatric Medicine, where Dr. Averi got his degree. Dr. Averi could not name one of his teachers who taught the method of surgery he used. Both Dr. Mercado's treatise and Dr. Ary disapproved of Dr. Averi's choice of site for surgery and his decision not to fix the bone in place during healing. Dr. Averi stated in deposition that he did not think that the choice of site for surgery was important or that it was necessary to fix the bone either with wire or in a cast. Dr. Ary also stated that, assuming as true Mr. Moore's statement that he complanied of pain after the operation, Dr. Averi's failure to take any postoperative X-rays was a deviation from the standard of care. These matters present ample evidence that Dr. Averi breached his express contract to perform as a competent podiatrist.
If podiatrists are not subject to the Alabama Medical Liability Act, an action may be maintained in the appropriate circumstances against them for malpractice in contract or in tort, and, if brought in contract, the six year limitation of § 6-2-34 presumably would apply. We note that Ala.Code 1940 (Recompiled 1958), tit. 7, § 25(1), provided the following statute of limitations:
"(1) All actions against physicians and surgeons, and dentists for malpractice, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the cause of action, and not afterwards. Provided that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier, provided further that in no event may the action be commenced more than six years after such act."
(Emphasis added.) This provision was not carried into the 1975 Code due to the enactment in 1975 of the Medical Liability Act. We make no judgment whether the holding in Sellers that podiatrists are not subject to the Medical Liability Act revives the above-quoted provision with respect to actions against podiatrists, because the instant action sounding in contract was timely under either the above section or § 6-2-34.
The Moores argue further that Dr. Averi expressly promised a successful outcome. Because Mr. Moore does not allege or prove fraud on the part of Dr. Averi in inducing him to execute the "consent to operate" form, which disavows any assurance "as to the results that may be obtained," we affirm that portion of the judgment that eliminates this aspect of the Moores' contract claim. Orange v. Shannon, 284 Ala. 202, 224 So.2d 236 (1969); Snow v. Allen, 227 Ala. 615, 151 So. 468 (1933).

II
We next address the issue of whether the statute of limitations had run on the tort claim. The first aspect of this issue is the argument that the statute of limitations is tolled during the continuing treatment of the plaintiff for the same ailment.
*253 Ala.Code 1975, § 6-5-482, provides that actions under the Medical Liability Act "must be commenced within two years next after the act or omission or failure giving rise to the claim." Similar language was found in Ala.Code 1940 (Recomp.1958), tit. 7, § 25(1); that section derived from a 1953 statute, 1953 Ala. Acts 766. This language would seem to preclude the application of the continuing treatment rule for which the Moores argue; at any rate, no case since 1953 has come to our attention in which a plaintiff has argued for the continuing treatment rule.[3]
The Court, in an opinion by Justice Bouldin, did refer to that rule, however, in Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940):
"Several cases, following the lead of Gillette v. Tucker, 67 Ohio St. 106, 65 N.E. 865, 93 Am.St.Rep. 639, postpone the running of the statute of limitations during the period of post operative treatment under the same employment. This, upon the ground that the operation is incomplete if a foreign substance is left in the body on closing the operative wound, and the surgeon has a continuing duty to discover his dereliction and remedy it while he is still treating the ailment. This inquiry is unimportant in this case.
"We may say there is good reason behind the doctrine of Gillette v. Tucker, supra. Still, we would not commit ourselves to any idea that a cause of action would not have arisen for the pain and suffering entailed in re-opening the wound, if discovered during the post operative treatment, and removed.
"The decisions are practically unanimous in holding, that in the absence of fraudulent concealment as above defined, the statute begins to run when the relation of surgeon and patient ends with reference to the ailment treated."
The "inquiry [was] unimportant" in Hudson because the action was brought fifteen years after the operation.[4] The plaintiff was arguing that the surgeon's fraudulent concealment of his failure to remove a sponge tolled the statute of limitations. The Court held that the plaintiff had not alleged facts sufficient to toll the running of the statute. We quote at length because the discussion is pertinent both to the present discussion of why the continuing treatment rule was not pertinent in Hudson and to the issue of fraudulent concealment presented by the Moores:
"In dealing with these pleadings we must keep in mind the issue involved is fraudulent prevention of discovery of plaintiff's cause of action.
"What the defendant said to plaintiff touching the operation at the time had no necessary or obvious connection with the failure to discover the cause of action for fourteen years.
"Reliance is had on parol statements so far in the past that all the reasons for the rule of repose are present. The complaint, to which later pleadings are related, discloses that infection appeared leading to suffering and medical treatment for many years. For aught appearing infection followed in the usual time. Obviously the plaintiff could never discover for herself the cause of further trouble, a failure of the operation so to speak.
"The replication does not disclose how or by whom the foreign substance was discovered. In one or more pleadings it is averred this discovery was made by an X-ray examination under direction of a physician in another state where plaintiff now resides. For aught appearing the cause of the trouble could have been discovered in the same manner within one year as well as within fourteen. Defendant, not being called on himself for further treatment, was not responsible for any failure of other physicians to *254 employ the X-ray. It narrows down to the question: Does this pleading show that what defendant said to plaintiff at the time of the operation prevented a discovery of the fact of a foreign substance in the body? Did plaintiff tell her later physician what defendant said, and did they rely on it, in the face of the fact that something was wrong? None of these facts, or other facts, are averred to show non-discovery by reason of the alleged statements of defendant.
"Like other charges of fraud, facts must be averred from which it can clearly be seen that fraud has intervened to prevent a discovery of the wrongful act upon which the action is based."
Id., 239 Ala. at 134-35, 194 So. at 150-51 (citations omitted; emphasis added).
Thus, Hudson cited the continuing treatment rule generally with approval, although that rule would not have defeated the statute of limitations defense in that case. No other Alabama case discussing the rule has come to our attention. Upon inspection of the authorities cited by the Moores, we have determined that the continuing treatment rule is supported by the weight of authority. See, e.g., Sheldon v. Sisters of Mercy Health Corp., 102 Mich. App. 91, 300 N.W.2d 746 (1981); Farley v. Goode, 219 Va. 969, 252 S.E.2d 594 (1979); Borgia v. City of New York, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962); Williams v. Elias, 140 Neb. 656, 1 N.W.2d 121 (1941); Schmit v. Esser, 183 Minn. 354, 236 N.W. 622 (1931); Gillette v. Tucker, 67 Ohio St. 106, 65 N.E. 865 (1902);[5] 1 D. Louisell & H. Williams, Medical Malpractice §§ 13.08-13.09 (1987); 2 S. Pegalis & H. Wachsman, American Law of Medical Malpractice § 6:10 (1981); S. Septimus, "The Concept of Continuous Tort as Applied to Medical Malpractice," 22 Tort & Ins.L.J. 71, 80-81 (1987); 61 Am.Jur.2d, Physicians, Surgeons, etc., § 320 (1981); 70 C.J.S., Physicians and Surgeons, § 108(c) (1987); Annot., 4 A.L.R. 4th 318 (1981); Annot., 80 A.L.R.2d 320 (1961).
Maryland applied the continuing treatment rule, which the court described as the common law rule, until that rule was abrogated by enactment in 1975 of a new medical malpractice statute of limitations. Hill v. Fitzgerald, 304 Md. 689, 501 A.2d 27 (1985). The Court of Appeals of Arizona, in Russo v. Diethrich, 126 Ariz. 522, 617 P.2d 30, 35 (Ariz.Ct.App.1980), rejected the plaintiff's attempt to establish that the statute of limitations would be tolled "as long as the physician-patient relationship exists." We note that the Arizona statute had specific provisions tolling the statute of limitations until discovery or if the defendant concealed the basis of the action. Kansas has also rejected the continuing treatment rule. Hecht v. First National Bank & Trust Co., 208 Kan. 84, 490 P.2d 649 (1971).
The facts in this case illustrate the virtue of the continuing treatment rule. Dr. Averi cut through a metatarsal in Mr. Moore's foot to treat Mr. Moore's ailment, and the break did not heal properly. Viewing the evidence most favorably to the Moores, as we are required to do in reviewing the summary judgment for Dr. Averi, it appears that the failure of the break to heal was caused by Dr. Averi's cutting through the bone at an inappropriate point and by his failure to immobilize the bone either with wire or in a cast. During the two months after surgery that Mr. Moore continued to see Dr. Averi, Dr. Averi did not discover the improper healing and did not even take any X-rays of the foot. Thus, as the Supreme Court of Virginia said in Farley, supra, "the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates." 219 Va. at 976, 252 S.E.2d at 599.
Because we hold that the continuing treatment rule was applicable in this case so as to avoid the bar of the statute of limitations on the tort claim, we pretermit consideration of the Moores' argument that *255 the statute was tolled by the alleged fraudulent concealment.
The judgment is affirmed as to the "successful result" aspect of the contract claim and reversed as to the tort claim and the "due care" aspect of the contract claim, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I write to emphasize that we are not retreating from our long established rule that the law does not imply a promise by, but rather imposes a duty on, a medical provider, to exercise due care. Lemmond v. Sewell, 473 So.2d 1047 (Ala.1985). Therefore failure to exercise due care is actionable in tort rather than in contract.
However, in Lemmond, we went on to point out that no question concerning an implied in fact as opposed to an implied in law contract was involved. The present case allegedly involves an express or implied in fact contract. In addition, the question arises in a summary judgment context; therefore, plaintiff need only produce a scintilla of evidence to support his claim that such an implied in fact contract exists. Sanders v. Kirkland & Co., 510 So.2d 138 (Ala.1987).
The facts reveal that the defendant intended to use a fairly new procedure to remedy Mr. Moore's problem. The facts support the argument that defendant expressly stated that he had the skills to perform the procedure and that he would exercise due care. In addition to the deposition testimony of the defendant set forth in the majority opinion, the following appears in the deposition testimony of the plaintiff. In response to a question about why Mr. Moore had not read the consent-to-operation form, he replied, "How many would read anything like that, when you're sure of a doctor knowing his job ... ?" Later, in response to questioning about whether the defendant told him about the procedure to be performed and whether the defendant had told him that he knew what he was doing, the plaintiff said: "And he saidhe assured me he did. That he knew what he was doing. It was sort of a new procedure, he said." In addition, Mr. Moore testified, "And then he said, `Well, Terry, what I'm doing is just assuring you that I know what I'm doing.'"
In light of the defendant's affirmative answer to the question of whether he expressly, or by conduct, indicated that he would use due care, and plaintiff's testimony that indicates the defendant may have made such statements, I agree that there was a scintilla of evidence of an express or implied in fact contract.
NOTES
[1] Mrs. Moore's claim is for loss of her husband's services and consortium, and will not be treated separately.
[2] Moore also argues that he stated a claim for breach of an express contract to achieve a successful result.
[3] Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979), is not controlling here. Mr. Garrett sought approval of a discovery rule in a products liability case involving radiation exposure. A continuing exposure rule would not have brought the action within the statute of limitations.
[4] The Court noted that the one-year tort statute of limitations and the six-year contract statute of limitations had been interposed, but that no issue was presented as to whether the action sounded in tort or contract.
[5] The Supreme Court of Ohio has overruled Gillette, abandoning the continuing treatment rule in favor of the discovery rule. Oliver v. Kaiser Community Health Foundation, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983).