707 So.2d 635 (1997)
Ex parte Marc Q. SONNIER, M.D.; Robert van der Meer, M.D.; and Flowers Hospital, Inc.
(Re Tammy TALLEY and Lawrence Talley v. Marc Q. SONNIER, M.D., et al.).
1960685.
Supreme Court of Alabama.
October 3, 1997.
*636 Fred W. Tyson and Patrick M. Shegon of Rushton, Stakely, Johnston & Garrett, P.A. Montgomery, for petitioners.
Lister H. Proctor and Wanda J. Batson of Proctor & Vaughn, Sylacauga; and Sybil Shainwald, New York City, for respondents.
ALMON, Justice.
This Court granted the petition of the defendants Marc Q. Sonnier, M.D., Robert van der Meer, M.D., and Flowers Hospital, Inc., for a writ of certiorari to review the judgment of the Court of Civil Appeals. That court reversed a summary judgment in favor of the defendants in an action filed by Tammy Talley and Lawrence Talley[1] based on allegations that the defendant doctors had performed an unnecessary hysterectomy and had later misrepresented that Mrs. Talley had had cancer. See Talley v. Sonnier, 707 So.2d 631 (Ala.Civ.App.1996). The question is whether the reversal by the Court of Civil Appeals conflicts with Jones v. McDonald, 631 So.2d 869 (Ala.1993), regarding the application of § 6-5-482, Ala.Code 1975, the statute of limitations for medical liability actions.
Because the Talleys were the nonmovants in the summary judgment proceedings, we must consider the evidence in the light most favorable to their position. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala.1992). Mrs. Talley alleges that the defendants performed an unnecessary hysterectomy on her on April 1, 1991. For the sake of removing a supposed cervical cancer, the defendants removed Mrs. Talley's uterus. Mrs. Talley also alleges that the defendants falsely represented to her, both before and after the hysterectomy, that she had had cancer and that the hysterectomy was necessary because of the cancer. In December 1994, Mrs. Talley read a magazine article about unnecessary hysterectomies. She asserts that she then obtained her 1991 hospital records and discovered that the 1991 diagnosis of cancer was incorrect. The Talleys filed this action on April 5, 1995, four years and four days after the hysterectomy. The *637 circuit court entered a summary judgment for the defendants, who had moved for a summary judgment on the basis that the period of limitations had expired four days before the Talleys filed their complaint. The Court of Civil Appeals reversed, holding that "the evidence of these misrepresentations created a genuine issue of fact as to the date on which the claims would have been barred and that a jury could determine that on each visit a separate act of malpractice occurred."
Sections 6-5-480 et seq. and 6-5-540 et seq., Ala.Code 1975 (the "Alabama Medical Liability Act," hereinafter "AMLA"), govern medical malpractice actions in Alabama. Section 6-5-482(a) provides:
"[Medical malpractice actions] must be commenced within two years next after the act ... giving rise to the claim ...; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act ...."
Subsection (b) states that the tolling provisions appearing elsewhere in the Code shall apply to medical malpractice actions, but reiterates the rule that "no action shall be commenced more than four years after the act, omission, or failure complained of." This Court has held that the four-year period of repose in the AMLA is an "absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues." Bowlin Horn v. Citizens Hospital, 425 So.2d 1065, 1070 (Ala.1982).
There is no dispute that the complaint was filed more than two years after the date of the alleged malpractice. Therefore, if the complaint was timely, it was because of the operation of the provision that where the cause of action is not discovered within the two-year period an action may be commenced within six months after the discovery. The defendants do not dispute Mrs. Talley's claim that she did not discover, and could not reasonably have discovered, before December 1994 that she had a cause of action arising from the hysterectomy and the subsequent treatment. It is also undisputed that the Talleys did file the complaint within six months after this discovery. The defendant doctors continued to treat Mrs. Talley until October 1991, less than four years before the complaint was filed on April 5, 1995.
The limitations period for a medical malpractice action begins to run upon the accrual of a cause of action. Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala. 1994). Accrual occurs when the wrongful act "results in legal injury to the plaintiff." Id. In Delchamps, the plaintiff received a jaw implant and subsequently suffered bone degeneration. This Court held that the key inquiry in determining the accrual date of her claim was not the date of her surgery, or the date on which she became aware of the degeneration, but the time at which she first suffered the degeneration. 642 So.2d at 958. Mrs. Talley suffered the alleged legal injury caused by the performance of the hysterectomy not later than April 1, 1991. Therefore, any claims arising from the performance of the hysterectomy itself are barred by the four-year period of repose. The remaining question is whether the summary judgment was proper as to the claims based on alleged misrepresentations by Mrs. Talley's doctors after her surgery.
The defendant Flowers Hospital, Inc., has not been accused of making any false representations after the surgery; therefore, the claims against Flowers Hospital fall outside the four-year period of repose. The Talleys argue that as to the hospital the summary judgment was improper, on the ground that the hospital has respondeat superior liability for the actions of "its physicians." However, the Talleys did not produce substantial evidence of any agency relationship between Sonnier or van der Meer and Flowers Hospital. For that reason, no claim against Flowers Hospital arose within four years of the filing of the complaint, and the summary judgment was properly entered as to the hospital. Therefore, the judgment of the Court of Civil Appeals is *638 due to be reversed as to the claim against Flowers Hospital.
To allow the subsequent misrepresentations to extend the statute of limitations as to malpractice relating to the hysterectomy, as the Talleys ask us to do, we would have to adopt the "continuing treatment rule," which was once accepted under Alabama law. At one time, the law was that "the statute begins to run when the relation of surgeon and patient ends with reference to the ailment treated." Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940). That law may still apply except in actions governed by the AMLA. In Moore v. Averi, 534 So.2d 250 (Ala.1988), an action against a podiatrist, this Court held that "the statute of limitations commences to run when the improper course of examination, and treatment if any, ... terminates." 534 So.2d at 254.
Neither Hudson nor Averi was governed by the AMLA. This Court considered the continuing treatment rule in Jones v. McDonald, 631 So.2d 869 (Ala.1993), and held that it did not apply in actions brought under the AMLA. In fact, the Court held that application of the continuing treatment rule would be inconsistent with the provision that allowed for tolling the statute of limitations during periods before the injury could be discovered, concluding that the continuing treatment rule and the statutory tolling provision served virtually the same purpose. 631 So.2d at 872.
The Talleys argue that the subsequent misrepresentations were separately actionable incidents of malpractice. These alleged misrepresentations took place after the surgery, from April 1991 until October 1991. Claims alleging misrepresentations made during the course of a doctor-patient relationship are claims of malpractice and are governed by the AMLA. Benefield v. F. Hood Craddock Clinic, 456 So.2d 52, 54 (Ala. 1984). Therefore, the statutory limitations period for these alleged incidents of malpractice is also two years, although the running of that period would be tolled by Mrs. Talley's inability to discover the fact that she had a cause of action. Because the Talleys allege that several of the misrepresentations were made after April 5, 1991, the four-year period of repose would not bar claims based on those incidents, if those incidents do give rise to actionable claims of malpractice.
Because the Talleys timely filed the complaint with respect to the misrepresentations Mrs. Talley says the doctors made subsequent to the surgery, this Court must determine whether the Talleys presented substantial evidence to support their malpractice claims. Although the circuit court appears to have entered the summary judgment for the defendants on the basis that the statute of limitations barred the action, this Court would affirm the judgment if it was proper for some other reason. Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 246 (Ala.1992). To defeat a properly supported summary judgment motion by the doctors, the Talleys had to present substantial evidence indicating that the doctors breached the applicable standard of care and that their breach injured Mrs. Talley. Ala.Code 1975, § 6-5-548(a).
To establish that the doctors breached the standard of care, Talley offered the affidavit of Dr. Michael Bruck, who is a board-certified physician. Dr. Bruck stated, among other things:
"My review of the file reflects the fact that at no time did the plaintiff, TAMMY TALLEY, suffer from cancer. Her pre-operative tissue diagnosis was `mild dysplasia with condylomatous change' (see Exhibit [B]), and postoperatively her diagnosis was `cervical squamous dysplasia ...' (see Exhibit [A]).
"The defendant physicians continued to advise the plaintiff, TAMMY TALLEY, that she had cancer which initially necessitated her hysterectomy and, according to the defendants, was confirmed by the hysterectomy.
"It is my opinion, to a reasonable degree of medical certainty, that the defendant physicians departed from accepted medical practice by:

"i. Recommending and performing a hysterectomy on a 25 year old woman for mild dysplasia;

*639 "ii. Improperly diagnosing her condition, and advising her that she suffered from cancer, and
"iii. Continuing to advise the plaintiff, TAMMY TALLEY, following her hysterectomy in April, 1991 for a period of several months, that she did in fact suffer from cancer.

"As a result of her unnecessary hysterectomy, and continued representations to the patient that she had suffered from cancer (based on plaintiff's Affidavit), it is my opinion that the plaintiff, TAMMY TALLEY, suffered severe, permanent, emotional and physical damages."
(Emphasis added.) As we have held above, claims based on the assertions of malpractice stated in paragraphs i. and ii. are barred by the statute of limitations. It is only the malpractice asserted in paragraph iii. with which we are now concerned. Exhibit A, the post-operative "tissue report" by a pathologist, was dated April 2, 1991; it concludes: "No invasive carcinoma is demonstrated."[2] Thus, after Mrs. Talley's surgery, the pathologist's report to Drs. Sonnier and van der Meer indicated that she had not had cancer.
The defendants argue that Dr. Bruck's testimony is inadmissible because Dr. Bruck is not a certified specialist in obstetrics and gynecology, as the defendant doctors are, and is therefore not a "similarly situated health care provider" qualified to give evidence in this case. See Ala.Code 1975, § 6-5-548(c). Generally speaking, that section provides that, when the defendant health care provider is a board-certified specialist trained and practicing in a particular specialty, a "similarly situated health care provider" is one trained, certified, and practicing in the same specialty. Section 6-5-548(e) provides that to testify against a health care provider an expert witness must be a "similarly situated health care provider."
This Court considered a similar issue in Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), and held that the first inquiry in determining whether a witness is a "similarly situated health care provider" is "What is the standard of care alleged to have been breached?" 583 So.2d at 1293. In Medlin, a doctor who was certified in internal medicine was deemed "similarly situated," for purposes of testifying against a doctor who was certified in family medicine, because the subject of the testimony was an alleged breach of the standard of care in emergency treatment. Because the alleged breach of the standard of care was unrelated to the defendant doctor's specialty, the statute did not require that the testifying doctor be certified in that specialty.
In Rodgers v. Adams, 657 So.2d 838 (Ala. 1995), this Court held that the affidavit of a prosthodontist[3] should have been considered as expert testimony admissible to prove an alleged breach of the standard of care to be observed by a general dentist, because the prosthodontist was familiar with the standard of care relevant to the particular breach alleged to have been committed. 657 So.2d at 842. This Court held that, because the alleged breach of the standard of care involved general dentistry, if the prosthodontist had been the defendant the general dentist could have testified against him, even though the general dentist was not a specialist in prosthodontics. Id. This result would have obtained because the general dentist was familiar with the particular standard of care alleged to have been breached; the standard was common to both disciplines. Id. (citing Craig v. Borcicky, 557 So.2d 1253, 1256 (Ala.1990)).
Similarly, in Olsen v. Rich, 657 So.2d 875 (Ala.1995), this Court held that it was proper for a doctor who was not a board-certified cardiologist to testify regarding an alleged breach of the standard of care committed by a certified cardiologist regarding "the standard *640 of care ... of a `health care provider' intravenously administering medications during a medical procedure." 657 So.2d at 880. The witness, a vascular, cardiac, pulmonary, and esophageal surgeon, was qualified to testify as to the proper administration of intravenous medication because his experience included extensive involvement with the administration of intravenous drugs. Therefore, he could testify in an action against a doctor who was alleged to have improperly administered such medication, even if he did not possess the same certifications as the defendant cardiologist. Id. This Court held that, because the witness was "at least as qualified in the area of the alleged negligence" as the defendant, 657 So.2d at 882, he met the statutory definition of a "similarly situated health care provider" for purposes of testifying about that alleged negligence.
The alleged malpractice here was the doctors' continuing to tell Mrs. Talley that she had cancer, even after the results of the hysterectomy showed that she did not have cancer. From all that appears in the record, we conclude that Dr. Bruck was qualified to testify as a similarly situated health care provider as to this alleged breach of the standard of care. In opposition to the defendants' summary judgment motion, the Talleys submitted substantial evidence indicating that the alleged breach is not relevant to the specialty of obstetrics or gynecology. Instead, the Talleys allege a breach that virtually requires no expert testimony: after the issuance of a tissue report showing no evidence of cancer, the defendant doctors continued to tell Mrs. Talley that she had had cancer of the uterus. This is substantial evidence that the defendant doctors made material false representations to Mrs. Talley as their patient. The circuit court's judgment should not be affirmed based on any conclusion that, to give the pertinent opinions in his affidavit, Dr. Bruck would have to be certified in obstetrics and gynecology. At least absent any countervailing evidence by the defendants, Dr. Bruck's testimony is substantial evidence of a breach of the standard of care.
The remaining issue is whether the Talleys alleged an actionable injury resulting from the alleged false representations. Mrs. Talley stated in an affidavit that the representations caused her to suffer emotional distress and that the defendant doctors also convinced her to return more often for checkups, because, thinking she had suffered from cancer, she thought she was more likely to have cancer than someone who had never had cancer. Her affidavit states:
"Doctors Sonnier and van der Meer performed a hysterectomy on me in April, 1991. After I was released from the hospital, I continued my follow-up care with these doctors. I saw them at least three times after the surgery and subsequent to April 14, 1991, with my last visit to them being in October, 1991.
"During each visit after April 4, 1991, doctors Sonnier and van der Meer discussed with me that I had cancer and therefore needed a hysterectomy. As a matter of fact, they said that because I had cancer I would need a checkup every six months instead of once a year. This was last discussed with me in October, 1991.
"After I was told I had cancer, I became severely depressed and suicidal. As a result, I was hospitalized for psychiatric treatment from August 31, 1992, until September 14, 1992."
The Talleys presented substantial evidence of a cognizable injury.
Therefore, Mrs. Talley's failure to discover the injury can operate to toll the running of the limitations period and to extend the last date for filing a complaint to six months after the discovery of the injury, although it cannot operate to extend that date beyond the four-year period of repose provided in Ala.Code 1975, § 6-5-482. Because of this period of repose, the summary judgment was proper as to those claims related to the alleged acts of malpractice that occurred more than four years before April 5, 1995 (the date the complaint was filed). However, in regard to the claims of malpractice based on the allegations of false representations made on or after April 5, 1991, the circuit court erred in entering the summary judgment for the defendant doctors, and the *641 judgment of the Court of Civil Appeals reversing the summary judgment is due to be affirmed as to those claims.
The judgment of the Court of Civil Appeals is affirmed as to those claims against the defendant doctors based on allegations of malpractice occurring on or after April 5, 1991. It is reversed as to the remaining claims. The cause is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
MADDOX and SEE, JJ., concur in part and dissent in part.
SEE, Justice (concurring in part and dissenting in part).
I concur with the majority's opinion to the extent it holds the Talleys' claim against Drs. Sonnier and van der Meer is time-barred and to the extent it holds the Talleys did not state a cognizable claim against Flowers Hospital under the doctrine of respondeat superior. However, I must respectfully dissent from the portion of the opinion that, while purporting to reject the "continuing treatment" rule in medical malpractice cases governed by the Alabama Medical Liability Act ("AMLA"), in fact adopts that rule.
Mrs. Talley's hysterectomy occurred on April 1, 1991. The Talleys did not file this AMLA action until April 5, 1995more than four years after her alleged injury. Section 6-5-482, Ala.Code 1975, provides in pertinent part:
"(a) [Medical malpractice actions] must be commenced within two years next after the act ... giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act ....
"(b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, Sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30, and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action."
(Emphasis added.) A plain reading of § 6-5-482 indicates that the Talleys' medical malpractice claim falls outside the maximum four-year limitations period and is therefore time-barred.
Nevertheless, the majority notes the evidence of Mrs. Talley's subsequent visits to the defendant doctors and the resulting misrepresentations concerning her medical condition and then holds that the claims based on those misrepresentations are not barred by § 6-5-482. The majority appears to be applying the "continuing treatment" rule, under which the Talleys' malpractice claims would not be barred because the limitations period would begin to run "when the relation of surgeon and patient ends with reference to the ailment treated." Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940). Given the four-year limitations period of § 6-5-482, the viability of the Talleys' April 5, 1995, claims of misrepresentation depends on the applicability of the continuing treatment rule to those misrepresentations that arose from Ms. Talley's April 1, 1991, hysterectomy.
In Jones v. McDonald, 631 So.2d 869 (Ala. 1993), this Court held that § 6-5-482, enacted in 1975, abrogated the continuing treatment rule in actions brought under the AMLA. This Court observed that while § 6-5-482(a) expressly adopts a tolling provision that extends the limitations period to a point six months beyond the reasonable discovery of the injury, it did not expressly adopt the continuing treatment rule, which serves the *642 same function as the discovery rule: to postpone the running of the statutory limitations period because a plaintiff is not likely to discover the malpractice while under the defendant doctor's care. Jones, 631 So.2d at 872. This Court stated that "with the discovery rule in § 6-5-482, the need for judicial adoption of a continuing treatment rule is lessened, if not altogether removed." Id. Accord Street v. City of Anniston, 381 So.2d 26, 29 (Ala.1980) (concluding that "the legislature, by enacting Code 1975, § 6-5-482(a), intended to shorten the time period within which [medical malpractice actions] could be brought").
In Jones, 631 So.2d at 871, this Court further noted that § 6-5-482(b) incorporates numerous tolling provisions, including § 6-2-3, which tolls the running of the limitations period on fraud claims until the fraud is discovered, but that § 6-5-482(b) does not incorporate the "continuing treatment" rule. In addition, § 6-5-482(b) limits the scope of operation of the various tolling provisions by stating that "notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of." The Jones Court concluded:
"Section 6-5-482 precludes application of the continuing treatment rule because:... [1] it provides for a discovery rule, which is an alternative to the continuing treatment rule; and [2] it provides in paragraph (b) for tolling provisions but does not include the continuing treatment rule. Therefore, the continuing treatment rule is not applicable to actions brought pursuant to the AMLA."

631 So.2d at 873 (emphasis added).
Although the majority concedes that the continuing treatment rule cannot apply to this action, it nonetheless applies that rule by characterizing Mrs. Talley's subsequent visits to the defendant doctors, at which she received diagnoses and advice, as "subsequent misrepresentations [which are] separately actionable incidents of malpractice." 707 So.2d at 638. To the extent, however, that these alleged misrepresentations were not separate and distinct from Mrs. Talley's hysterectomy, but intrinsically related to it, they are part and parcel of the same cause of action. Each of Mrs. Talley's subsequent visits to the defendant doctors directly concerned the conditions leading to and resulting from her hysterectomy. Thus, the majority's holding that claims based on the alleged misrepresentations are not time-barred is effectively an application of the continuing treatment rule to Mrs. Talley's original hysterectomy, even though this rule was specifically rejected by this Court in Jones, supra. Amendment of § 6-5-482 to adopt the continuing treatment rule lies within the prerogative of the Legislature, not this Court. I therefore dissent from the majority's contrary holding.
MADDOX, J., concurs.
NOTES
[1] Lawrence Talley's only claim is based on an allegation of loss of consortium caused by Tammy Talley's alleged personal injuries.
[2] Because the statute of limitations bars any liability stemming from the pre-operative diagnosis, the March 12 tissue report, Exhibit B to Dr. Bruck's affidavit, is not relevant to the claim we are now considering. It does not, however, state a diagnosis of carcinoma, but rather of "mild dysplasia associated with condylomatous change."
[3] Prosthodonty is a "branch of dentistry dealing with artificial dental structures, as teeth, crowns, etc." Rodgers, 657 So.2d at 841 (citing 3 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder P-346 (1990)).