[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16867
Non-Argument Calendar

_____

D. C. Docket No. 99-00552-CV-WS-C

THE CINCINNATI INSURANCE COMPANY,

Plaintiff-Counter-Defendant-Appellee,

versus

MATTHEW LEATH COCHRAN,
FOREIGN AUTO PARTS OF MOBILE, INC.,
PROFESSIONAL ENGINE SERVICE, INC.,

Defendants-Counter-Claimants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(December 27, 2006)**

Before MARCUS, WILSON and HILL, Circuit Judges.

PER CURIAM:

This is an appeal from a jury verdict in favor of plaintiff-appellee The Cincinnati Insurance Company (CIC) and against defendants-appellants Matthew Leath Cochran (Cochran), Foreign Auto Parts of Mobile, Inc. (FAPM) and Professional Engine Service, Inc. (PES). Before ruling, the jury deliberated for three hours.

While this appeal appears at first glance to be onerous and voluminous, the issues presented are quite simple and straightforward. They are premised upon four evidentiary and procedural rulings by the district court during the eight-day trial. Based upon the following discussion, the judgment of the district court is affirmed in all respects.

I.

The issues presented are:

A. Whether or not the district court erred in striking Cochran's counterclaim for malicious prosecution?

B. Whether or not the district court erred in excluding evidence of prior bad acts in previous unrelated trials of Cincinnati's fire cause and origin expert witness, Harold Deese?

C. Whether or not the district court erred in admitting into evidence at trial

2

transcripts of audio recordings when the audio tapes themselves were not available?

D. Whether or not the district court erred in denying Cochran's motion for new trial when a 4,000-page claims file, admitted into evidence and sent to the jury room, contained information in two letters regarding mediation proceedings and offers of compromise?

II.

The facts will be recited only as to how they impact upon the issues before us on appeal. The same will be true of the procedural history of the case.

Both FAPM and PES were located in the same building at 713 Holcombe Avenue. CIC issued two fire policies to FAPM as the named insured, covering the building, business personal property and loss of business income. It issued one fire policy to PES as the named insured for business contents. Cochran, as owner and officer of the two corporations, was not a named insured.

In 1998, a fire occurred at 713 Holcombe Avenue and caused damage to the structure and loss to the personal property contained therein.[1] In 1999, CIC filed a declaratory judgment action against Cochran seeking to void the policies based

---

[1] Before a determination had been made as to the cause of the fire, CIC paid Cochran $25,352.59 for clean up expenses, security and payroll. It paid $102,058.53 to the two mortgage holders on the insured property.

upon the alleged arson and mispresentation of Cochran.  Cochran filed a counterclaim against CIC for breach of contract.

In 2000, the proceedings were stayed pending the conclusion of Cochran's criminal trial for second degree arson.[2]  The stay was lifted in 2001 and in 2002, CIC amended its complaint to add FAPM and PES as defendants.

Years of tortured procedural jockeying went on as the case meandered through several different judges chambers.  Various law firms and attorneys were hired or fired.  Twice, summary judgments in favor of CIC were granted.  Twice the case was closed.

In 2002, for a third time, discovery was reopened and Cochran amended his counterclaim to add bad faith, misrepresentation, conspiracy and spoliation of evidence.  In 2003, also for the third time, CIC's motion for summary judgment was granted, but this time it was granted in part, and denied in part.  The district court dismissed two of Cochran's counterclaims, misrepresentation and spoliation of evidence.

In late 2003, the district court set the matter for pretrial conference and a 2004 trial date.  In 2004, at the pretrial conference, the district court allowed

---

[2] Cochran's first state court trial ended in a hung jury.  The matter was reset and Cochran pled guilty to third degree arson.  Four years later, his conviction was set aside after the prosecutor filed an affidavit stating that CIC's fire cause and origin expert, Harold Deese, had engaged in unethical activities, i.e., allegedly altering fire scenes and evidence.

4

Cochran to amend and clarify his counterclaims, especially as to conspiracy. When the amended counterclaim was filed, it not only clarified its remaining claim, it added a new counterclaim of malicious prosecution.

The court struck the malicious prosecution counterclaim on two grounds: (1) that Cochran's "slight of hand" inclusion of the counterclaim was outside of the scope of what the court had allowed in its previous order, and (2) that at the time of the pretrial order, Cochran's criminal conviction had not yet been overturned, so that a malicious prosecution claim was not yet ripe for adjudication.

In 2005, the district court granted CIC's motion in limine precluding mention of CIC's expert witness, Harold Deese, prior bad acts in other unrelated trials of allegedly altering fire scenes and evidence, namely one in 1986 referred to as the Spread Lounge fire, and one in 1991 referred to as the Chickasaw, Alabama, fire. It also ruled that Cochran was not a proper counterclaim plaintiff and that Cochran could not maintain any counterclaims against CIC.

At trial, the district court allowed CIC to enter its claims file in excess of 4000 pages into evidence, including over 1,000 pages of transcripts of audio recordings, which CIC represented it could not locate. Also in the claims file were two pieces of attorney correspondence, documents No. 2900 and No. 4369. One letter referred to a prior summary judgment in favor of CIC granted by the district

court, before it was later vacated. The second disclosed confidential Eleventh Circuit mediation information and a prior offer of settlement.

The case was tried before a jury from November 1, 2005 to November 10, 2005. The jury found in favor of CIC as to breach of contract, bad faith denial of insurance benefits, conspiracy, spoliation of evidence and agency.

## III.

As to the striking of the malicious prosecution counterclaim, a district court's interpretation of its own order is properly accorded due deference on appeal, when its interpretation is reasonable. *See Cave v. Singletary*, 84 F.3d 1350, 1355 (11th Cir. 1996). As to the issues regarding the admission or exclusion of evidence by the district court, we review them for abuse of discretion. *See United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2002).

## IV.

A. Counterclaim for Malicious Prosecution

As part of their proposed pretrial order filed in January 2004, Cochran, FAPM and PES added new factual allegations of conspiracy which were not contained within the original scope of the pleadings and had not been the subject of any discovery since the lawsuit was filed in 1999. CIC filed a motion to strike. At

6

the February 2004 pretrial conference, the district court found that the counterclaims remaining were breach of contract, bad faith denial of insurance benefits, and conspiracy.

To resolve the dispute regarding the newly added charge of conspiracy the district court allowed Cochran *limited leave to amend*: "[I]n light of the factual allegations made by Defendants in the proposed pretrial order . . . , in particular factual allegations in connection with Defendants' counterclaim for conspiracy, the Court **hereby GRANTS** to Defendants **LEAVE TO AMEND** their counterclaims . . . so as to clarify the specific nature of their allegations." (Emphasis in original). Cochran amended and expanded his conspiracy allegations to conform to the order. However, outside the scope of the order, he added a new count of malicious prosecution.

The district court responded: "Even though [the district court], in February 2004, permitted [defendants] to amend their counterclaims to conform with allegations in the pretrial order, [its] order did not contemplate the addition of parties, nor did it contemplate the addition of RICO claims against the existing counterclaims defendant."[3] We agree. The district court was well within its

_____

[3] In finding that the defendants exceeded the permission granted by the order, adding the malicious prosecution counterclaim never before asserted, the court stated:

[The district court] granted leave to amend in light of factual allegations in the

7

discretion when it struck the malicious prosecution counterclaim on the basis that it exceeded the scope of the original order. This issue is affirmed.

B. Exclusion of Expert Witness Bad Acts

We have carefully studied the voluminous record on this issue in this appeal. We conclude that the district court acted well within its discretion in determining that evidence that CIC's expert witness Harold Deese allegedly tampered with two former fire scenes was not relevant under Fed.R.Evid. 401 in the present case, would unduly prejudice CIC under Fed.R.Evid. 403, and failed to meet the exceptions stated in Fed.R.Evid. 403. This issue is affirmed.

C. Admission of Audio Tape Transcripts

We have also carefully studied the voluminous record on this issue in this appeal. It is clear that CIC did not have either the originals nor copies of the audio tapes. At trial, CIC indicated its intent to introduce the claims filed which

---

proposed pretrial order 'related to the conspiracy claim' to 'clarify the nature of those allegations.' Granting permission to clarify factual allegations is not equivalent to granting permission to add counterclaims. Moreover, [the district court's] order contemplated that the amendments would be based on the proposed pretrial order which makes no mention of malicious prosecution. While there is some overlap between the allegations related to the conspiracy claim and the late-added malicious prosecution claim, a key element of malicious prosecution (termination of the underlying action in favor of the party seeking recovery) could not have occurred until after the proposed order was filed on January 23, 2004. Defendant Cochran pled guilty in the underlying state criminal case, and the conviction was not vacated until January 30, 2004, when the state court granted a Rule 32 petition.

contained the transcripts at issue. Cochran stated at trial at a conference held outside the presence of the jury that he no objection to CIC offering its claim file into evidence. However, in the presence of the jury, Cochran voiced his objection. The district court overruled the objection and admitted the claim file, including the audio transcripts. The district court did not abuse its discretion in so ruling. This issue can also be affirmed.

D.  Motion for New Trial Denied Based Upon Two Letters in the Claim File

This post-trial objection was not properly preserved at trial when CIC's claim file was properly admitted into evidence. A party must raise an objection to the evidence at the time it is introduced or this objection is waived. *Healthtrust, Inc. v. Cantrell*, 689 So.2d 822, 825-26 (Ala. 1999). We cannot consider this issue on appeal.

V.

Based upon the foregoing discussion, the four trial issues raised on appeal regarding procedural and evidentiary issues and the judgment from which the appeal is taken are

AFFIRMED.